FILED & ENTERED

JUL 30 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY pgarcia    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PACIFICA MESA STUDIOS LLC, | ) | Case No. 1:10-bk-18827 (GM) |
| | ) | |
| Debtor. | ) | |
| | ) | Date:   July 23, 2010 |
| | ) | Time:   10:00 am |
| | ) | Place:  Courtroom 303 |
| | ) |          21041 Burbank Blvd. |
| | ) |          Woodland Hills, CA 913567 |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING DEBTOR (A) TO OBTAIN
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
AND 364, (B) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363,
(II) GRANTING CERTAIN PROTECTIONS TO PREPETITION LENDER
PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (III) SCHEDULING FINAL
HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

Upon consideration of the motion (the "Motion")[1], dated July 21, 2010, of Pacifica Mesa

Studios, LLC (the "Debtor" or the "Borrower") in the above-captioned case (the "Chapter 11

Case") pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or
the DIP Loan Agreement, as applicable.

Rules for the Bankruptcy Court for the Central District of California, San Fernando Valley Division, seeking, among other things:

(i)      The Court's authorization for the Debtor to obtain postpetition financing (the "Financing"), consisting of a superpriority priming loan facility (the "DIP Facility") in an aggregate principal amount of up to $85,000,000 (the "DIP Commitment"), to be secured by liens on all of the property, assets and interests in property or assets of the Debtor and the Debtor's "estate" (as defined in the Bankruptcy Code), in each case of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases (and proceeds from the disposition thereof), money, investment property, deposit accounts, all commercial tort claims and other causes of action (including any and all actions arising under the Bankruptcy Code), Cash Collateral (as that term is defined below), and all cash and non-cash proceeds, rents, products, substitutions, accessions and profits of any of the collateral described above (collectively, with respect to all such entities, the "Collateral"), and entered into among the Debtor, as debtor and debtor-in-possession under the Bankruptcy Code, LV Holdings, LLC, as successor in interest to Amalgamated Bank of New York, as trustee of Longview Ultra I Construction Loan Investment Fund (the "DIP Lender"), a portion of which Financing shall be used to refinance the Prepetition Indebtedness (as defined herein), subject to approval of any such refinancing in the Final Order;

(ii)      The Court's authorization for the Debtor and the Guarantors (collectively, the "Obligors"), as the case may be, to execute and deliver additional final documentation consistent with the terms of (or as may be required by) the Debtor-In-Possession Financing Agreement (as the same may be amended or modified, the "DIP Loan Agreement") in the form attached to this Order (the "Interim Order") as Exhibit A, the Guaranties (the "Guaranties") and all additional documentation (the "DIP Loan Documents" and together with the DIP Loan

Agreement, the "<u>DIP Documents</u>"), and to perform such other and further acts as may be required in connection with the DIP Documents;

(iii)    The Court's authorization for the use of proceeds of the Financing extended to the Borrower as expressly provided in the DIP Documents (A) to pay costs, fees and expenses of the DIP Lender and the Prepetition Lender, as provided for in this Interim Order and the DIP Documents, as well as all scheduled payments of interest and principal thereunder, (B) to provide working capital and for other general corporate purposes of the Borrower, and (C) to pay administration costs of this Chapter 11 Case and claims or amounts approved by the Bankruptcy Court; <u>provided</u>, that payments under clause (A) above shall be made from the proceeds of the DIP Facility irrespective of the then-applicable Budget;

(iv)    The Court authorizing the grant to the DIP Lender and any other parties referred to in the collateral documents (collectively, the "<u>DIP Secured Parties</u>") with respect to the DIP Obligations (as defined below), in accordance with the relative priorities as set forth more fully below:

(a)  pursuant to Bankruptcy Code section 364(c)(1), joint and several superpriority administrative expense claim status in the Chapter 11 Case, which claims in respect of the DIP Facility shall be superior to any and all other claims;

(b)  pursuant to Bankruptcy Code section 364(c)(2), a first priority lien on all unencumbered assets of the Borrower and its estate (now or hereafter acquired and all proceeds thereof);

(c)  pursuant to Bankruptcy Code section 364(c)(3), a junior lien on all encumbered assets (except as set forth in subparagraph (d) below) of the Borrower and its estate (now or hereafter acquired and all proceeds thereof); and

(d)  pursuant to Bankruptcy Code section 364(d), a first priority priming lien on all assets of the Borrower and its estate (now or hereafter acquired and all proceeds thereof) that were subject to the liens of the Prepetition

- 3 -

1    Primed Obligations (as defined below) as of the Filing Date (as defined

2    below);

3    (v)    The Court granting protection to the secured parties whose liens and security

4    interests are being primed by the Financing as set forth below (such parties, the "Lender

5    Protection Parties");

6    (vi)    The Court's authorization for the Debtor to use any Cash Collateral in which

7    Lender Protection Parties may have an interest and the granting of certain protections to the

8    Lender Protection Parties with respect to, inter alia, use of their Cash Collateral in accordance

9    with the Budget and the use (and any Diminution in Value (as defined below)) of their

10    collateral;

11    (vii)    The Court vacate and modify the automatic stay imposed by section 362 of the

12    Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions

13    of the DIP Documents and this Interim Order;

14    (viii)    The Court waiving any applicable stay (including under Bankruptcy Rule 6004)

15    and providing for immediate effectiveness of this Interim Order;

16    (ix)    Pursuant to Bankruptcy Rule 4001, the Court order that an interim hearing on the

17    Motion be held before this Court to consider entry of this Interim Order, authorizing that during

18    the period commencing on the date (the "Interim Order Entry Date") of this Court's entry of this

19    Interim Order and ending on the earlier of (a) the date this Court enters the Final Order and (b)

20    the occurrence of the DIP Loan Maturity Date (as defined in the DIP Loan Agreement) (such

21    period, the "Interim Period"), a portion of the DIP Commitments shall be borrowed by the

22    Borrower (the "Initial Availability"), subject to (i) delivery by the Borrower of the Budget, and

23    (ii) compliance with the terms, conditions and covenants contained in the definitive documents

24    relating to the DIP Facility, including, without limitation, the credit agreements, guarantees,

25    security agreements, pledge agreements and all other DIP Documents, in an amount equal to the

26    lesser of $1,100,000 or such other amount as may be approved by order of this Court, to be

27    made available during the Interim Period in accordance with the Budget; and

28    (x)    The Court schedule a final hearing (the "Final Hearing") to consider entry of the

- 4 -

1  Final Order granting the relief requested in the Motion on a final basis and authorizing the

2  balance of the borrowings under the DIP Documents on a final basis, as set forth in the Motion

3  and DIP Documents filed with this Court.

4          The interim hearing on the Motion having been held on July 23, 2010 (the "Interim

5  Hearing"); and based upon all of the pleadings filed with the Court, the evidence presented at

6  the Interim Hearing and the entire record herein; and the Court having heard and sustained,

7  resolved or overruled all objections to the interim relief requested in the Motion; and the Court

8  having noted the appearances of all parties in interest; and it appearing that the relief requested

9  in the Motion is in the best interests of the Debtor, its estate and its creditors; and the Debtor

10  having provided notice of the Motion as set forth in the Motion and it appearing that no further

11  or other notice of the Motion need be given; and after due deliberation and consideration, and

12  sufficient cause appearing therefor:

13  **BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE
COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND**
14  **CONCLUSIONS OF LAW.  THE FOLLOWING IS AN INTERIM ORDER AND MAY
BE LATER AMENDED, SUPPLEMENTED, OR REPLACED BY FURTHER INTERIM**
15  **ORDERS OR BY A FINAL ORDER:[2]**

16          A.    Filing Date.  On July 20, 2010 (the "Filing Date"), the Borrower

17  commenced its Chapter 11 Case by filing a voluntary petition for relief under the Bankruptcy

18  Code.  The Borrower is operating its business and managing its affairs as a debtor-in-possession

19  pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has

20  been appointed in the Chapter 11 Case.

21          B.    Jurisdiction; Venue.  The Court has jurisdiction over this case, the parties

22  and the Debtor's property pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to

23  28 U.S.C. §157(b)(2)(D).  Venue of the Chapter 11 Case and the Motion is proper under 28

24  U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105,

25  361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and

26  9014 and the Local Bankruptcy Rules.

27

28  [2]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as
findings of fact, pursuant to Bankruptcy Rule 7052.

C.    <u>Committee Formation</u>.  No official committee of unsecured creditors (the "<u>Creditors' Committee</u>") has yet been appointed in this Chapter 11 Case.

D.    <u>Prepetition Loan Documents</u>.  The Borrower is Borrower under that certain Construction Loan Agreement dated as of June 17, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Prepetition Loan Agreement</u>" and, together with the Security Documents (as defined therein), the "<u>Prepetition Loan Documents</u>"), between the Debtor and Amalgamated Bank of New York, as Trustee of Longview Ultra I Construction Loan Investment Fund (the "<u>Prepetition Lender</u>").  Pursuant to the Prepetition Loan Documents, the Prepetition Lender provided the Debtor with loans in the aggregate principal amount of approximately $74,135,131.40.  For purposes of this Interim Order, the term "<u>Prepetition Indebtedness</u>" shall mean all amounts owed, as of the Filing Date, to the Prepetition Lender under the Prepetition Loan Documents, including, without limitation, all Obligations (as defined in the Prepetition Loan Agreement) of the Debtor thereunder.

E.    <u>Stipulations</u>.  In requesting the Financing under the DIP Documents, the Debtor permanently, immediately and irrevocably acknowledges, represents, stipulates and agrees that, in each case subject to paragraph 19 of this Interim Order:

(i)    in entering into the DIP Documents, and as consideration therefor, the Debtor hereby agrees that until such time as all DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments are terminated in accordance with the terms of the DIP Documents, the Debtor will not (except as expressly permitted by this Interim Order, the DIP Documents and the Prepetition Loan Documents) in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens, security interests or claims provided under this Interim Order or the Prepetition Loan Documents to the DIP Lender or the Prepetition Lender by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364 of the Bankruptcy Code or otherwise;

(ii)    as of the Filing Date, (A) the aggregate principal amount of the Prepetition Indebtedness is not less than $ 74,135,131.40, plus all accrued and unpaid interest, plus all fees, costs and expenses incurred in connection therewith, and all other Obligations

- 6 -

under the Prepetition Loan Agreement, (B) all of the Prepetition Indebtedness is unconditionally owing by the Debtor to the Prepetition Lender, and (C) none of the claims in respect of the Prepetition Indebtedness is or shall be subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claims, recoupment, defense, disallowance, impairment or any other challenges under the Bankruptcy Code or any other applicable law or regulation by any person or entity, and the Prepetition Loan Documents constitute the legal, valid and binding obligations of the Debtor and its estate and are enforceable against the Debtor and its estate in accordance with the terms of the Prepetition Loan Documents;

(iii)    the liens securing the Prepetition Indebtedness (the "Existing Liens") (A) constitute valid, binding, enforceable and perfected first priority liens on the collateral as described in the Prepetition Loan Documents (the "Prepetition Collateral") that, prior to the entry of this Interim Order, were subject only to the Permitted Encumbrances (as defined in the Mortgage (as defined in the Prepetition Loan Agreement) and the terms of that certain Amended and Restated Intercreditor and Subordination Agreement, dated January 31, 2008 ("Intercreditor Agreement") between the Prepetition Lender and Workers Realty Trust II, L.P. ("Workers") and (B) are not, and shall not be, subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment or any other challenges under the Bankruptcy Code or any other applicable law or regulation by any person or entity;

(iv)    neither the DIP Lender nor the Prepetition Lender is a control person or insider of the Debtor by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Documents and/or the Prepetition Loan Documents;

(v)    as of the date hereof, there exists no claim or cause of action against the Prepetition Lender or the DIP Lender with respect to, in connection with, related to, or arising from the Prepetition Loan Agreement or the Financing  that may be asserted by any Obligor or any other person or entity;

(vi)    as of the date hereof, there were no other liens on or security interests in the Collateral except for the Existing Liens, liens in favor of Workers (the "Workers Lien") which liens are contractually subordinated to the Existing Liens except to the extent set forth in the Intercreditor Agreement, to the extent such liens are determined to be valid, perfected, binding and enforceable, the Permitted Encumbrances; and

(vii)    the Obligors forever and irrevocably release, discharge and acquit the former, current or future DIP Lender and Prepetition Lender, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses and judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including, without limitation, all legal and equitable theories of recovery arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Financing, the DIP Documents, the Prepetition Loan Documents, the Prepetition Primed Obligations or the transactions contemplated hereunder or thereunder including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under title 11 of the United States Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Lender and/or the DIP Lender.

F.    Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in which the Prepetition Lender under the Prepetition Loan Agreement has a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), whether existing on the Filing Date, arising pursuant to this Interim

- 8 -

Order or otherwise.  The Debtor requires the use of Cash Collateral to operate its business.
Without the use of Cash Collateral, the Debtor will not be able to meet its cash requirements for
working capital needs and an immediate shutdown of the Debtor's business will ensue.  The
DIP Lender and the Prepetition Lender do not consent to the use of Cash Collateral except on
the terms and for the purposes specified herein.

    G. <u>Lender Protection</u>.  The Lender Protection Obligations (as defined below)
are sufficient to protect the interests of the Lender Protection Parties in the collateral securing
the Prepetition Primed Obligations (as defined below) and no further adequate protection is
presently required under sections 363, 364 or any other provision of the Bankruptcy Code.

    H. <u>Purpose and Necessity of Financing</u>.  The Borrower requires the financing
described in the Motion and as expressly provided in the DIP Documents (i) to pay costs, fees
and expenses of the DIP Lender and the Prepetition Lender as provided for in the Interim Order
and the DIP Documents, as well as all scheduled payments of interest and principal thereunder,
(ii) to provide working capital and for other general corporate purposes of the Debtor, and (iii)
to pay administration costs of this Chapter 11 Case and claims or amounts approved by the
Bankruptcy Court, <u>provided</u> that payments of the above-described amounts in clause (i) shall be
made from the proceeds of the DIP Facility irrespective of the then-applicable Budget.  If the
Borrower does not obtain authorization to borrow under the DIP Loan Agreement and the DIP
Loans are not approved, the Borrower will suffer immediate and irreparable harm.  The
Borrower is unable to obtain adequate unsecured credit allowable as an administrative expense
under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the
Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Documents.
A loan facility in the amount provided by the DIP Documents is not available to the Borrower
without granting the DIP Lender superpriority claims, liens and security interests, pursuant to
sections 364(c)(1), (2), (3) and 364(d) of the Bankruptcy Code, as provided in this Interim Order
and the DIP Documents.  After considering all alternatives, the Borrower has concluded, in the
exercise of its prudent business judgment, that the loan facility provided under the DIP
Documents represents the best and only working capital financing available to it at this time.

900200.00001/95029190v.1

The DIP Facility is the only loan available to the Borrower and the Borrower has been unsuccessful in its attempts to find any alternative financing.  Additionally, the terms of the Financing and the use of Cash Collateral are fair and reasonable and reflect the Borrower's exercise of prudent business judgment consistent with its fiduciary duties.

I.    Good Cause.  Based upon the record presented to the court by the Debtor, it appears that the ability of the Debtor to obtain sufficient working capital and liquidity under the DIP Documents, and use of Cash Collateral is vital to the Debtor, its estate and its creditors. The liquidity to be provided under the DIP Documents and through the use of the Cash Collateral, will enable the Debtor to continue to operate its business in the ordinary course and preserve the value of its business.  The Debtor's estate will be immediately and irreparably harmed if this Interim Order is not entered.  Good cause has, therefore, been shown for the relief sought in the Motion.

J.    Good Faith.  The Financing and the DIP Documents have been negotiated in good faith and at arm's-length among the Obligors and the DIP Lender, and all of the obligations and indebtedness arising under, in respect of or in connection with theDIP Documents, including without limitation, all loans made to and guarntees inssued by the Obligors pursuant to the DIP Documents, an any other obligations under the DIP Documents, (all of the foregoing collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lender and its affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the Postpetition Liens (as defined below), the Superiority Claim (as defined below), and the Lender Protection Obligations shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits and privileges of this Interim Order regardless of whether this Interim Order is subsequently reversed, vacated, modified or otherwise is no longer in full force and effect or the Chapter 11 Case is subsequently converted or dismissed.

K.    <u>Consideration</u>.  The Borrower will receive and has received fair consideration and reasonably equivalent value in exchange for access to the DIP Loans, the use of Cash Collateral and all other financial accommodations provided under the DIP Documents.

L.    <u>Immediate Entry of Interim Order</u>.  The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  The permission granted herein to enter into the DIP Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor.  This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the continued flow of supplies and services to the Debtor necessary to sustain the operation of the Debtor's existing business and further enhance the Debtor's prospects for a successful restructuring.  Based upon the foregoing findings, acknowledgements and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.    <u>Disposition</u>.  The Motion is granted on an interim basis and on the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn, waived, settled, sustained or resolved and all reservations of rights included therein are hereby denied and overruled on their merits with prejudice.

2.    <u>Effectiveness</u>.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Filing Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.  This Interim Order shall be effective through August 16, 2010, after which the DIP Lender shall have no further obligations under the DIP Documents or this Interim Order and the Prepetition Lender shall no longer consent to the Debtor's use of Cash Collateral, in each case absent entry of a Final Order on terms acceptable to the DIP Lender and the Prepetition Lender.

900200.00001/95029190v.1

3.      Authorization of the Financing and DIP Loan Agreement.

(a)      The Debtor is hereby authorized to execute and enter into the DIP Documents, and the DIP Documents are hereby approved and incorporated herein by reference in their entirety.  To the extent that there are conflicts or inconsistencies between the DIP Documents and the Guaranties and this Interim Order, the terms of this Interim Order shall prevail.  The incorporation of the terms of default of the Dip Loan Agreement will be dealt with in the Final Order or any supplemental Interim Order and are not validated by this initial Interim Order except that the granting of relief from stay or the completion of other action that leads to the change in management or control of the Debtor shall be an event of default.

(b)      The Borrower is hereby authorized to borrow money pursuant to the DIP Documents during the Interim Period in an amount not to exceed $1,100,000, which shall be used solely as expressly provided in the DIP Documents and the Budget (i) to pay costs, fees and expenses of the DIP Lender and the Prepetition Lender as provided for in the Interim Order and the DIP Documents, as well as the scheduled payments of principal and interest thereunder, (ii) to provide working capital and for other general corporate purposes of the Debtor, and (iii) to pay administration costs of this Chapter 11 Case and claims or amounts approved by the Bankruptcy Court; provided that payments under clause (i) shall be made from the proceeds of the DIP Facility irrespective of the then-applicable Budget.

(c)      In furtherance of the foregoing and without further approval of this Court, the Borrower and the Prepetition Lender are authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be required or necessary for the Debtor's performance of its obligations under the Financing  including, without limitation:

900200.00001/95029190v.1

(i) the execution, delivery and performance of the DIP Documents, including, without limitation, the DIP Loan Agreement, any guarantees, any security and pledge agreements and any mortgages contemplated thereby,

(ii) the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lender, in each case in such form as the Debtor and the DIP Lender may agree;

(iii) the non-refundable payment of the fees referred to in the DIP Documents and costs and expenses as may be due in accordance with the DIP Documents, provided, however, that the fees and expenses of professionals employed pursuant to the DIP Documents are subject to the conditions contained in paragraph 7(a) of this Interim Order, and

(iv) the performance of all other acts required under or in connection with the DIP Documents.

(d)    The DIP Documents constitute valid, binding and non-avoidable obligations of the Obligors enforceable against each person or entity party thereto in accordance with their respective terms and the terms of this Interim Order for all purposes during the Chapter 11 Case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of this Chapter 11 Case. No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment or any other challenges

- 13 -

1    under the Bankruptcy Code or any other applicable law or regulation by any person or

2    entity.

3        4.    <u>Guaranties</u>.  Nothing in this Interim Order is approving or disapproving the

4    Guaranties, which have not been filed with the Court.  Nothing in the Interim Order is intended

5    to release or in any way modify the Guaranties given to others who are not parties to this

6    agreement or to affect their rights to pursue the Guarantors <u>except</u> to the extent that this would

7    lead to a change in management or control of the Debtor.

8        5.    <u>Superpriority Claims</u>.  The DIP Lender is hereby granted an allowed

9    superpriority administrative expense claim (the "<u>Superpriority Claim</u>") pursuant to section

10   364(c)(1) of the Bankruptcy Code for all DIP Obligation, having priority over any and all other

11   claims against the Debtor and its estate, now existing or hereafter arising, of any kind

12   whatsoever, including, without limitation, all administrative expenses of the kinds specified in

13   or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726,

14   1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become

15   secured by a judgment lien or other non-consensual lien, levy or attachment, which

16   Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition

17   property of the Debtor and its estate and all proceeds thereof.  Except as expressly set forth

18   herein, no other superpriority claims shall be granted or allowed in this Chapter 11 Case.  For

19   the avoidance of doubt, the Superpriority Claim may be satisfied from the proceeds of the

20   Avoidance Actions (as defined herein), provided however, that no person or entity (other than

21   the DIP Lender in accordance with this paragraph) shall receive the proceeds of Avoidance

22   Actions until such time as all DIP Obligations have been satisfied in full.  For the avoidance of

23   doubt, nothing in this paragraph shall abrogate, limit or otherwise diminish, alter, modify or

24   otherwise impact or affect any other term or condition of this Interim Order or any right of the

25   DIP Lender (or any finding with respect thereto) pursuant to this Interim Order (including,

26   without limitation, paragraphs F, G, H, I, J, K, L, 2, 3, 5, 6, 8, 11,16 or 32 hereof), the

27   Bankruptcy Code (including, without limitation section 364(e) of the Bankruptcy Code) or

28   applicable law.

6.      Postpetition Liens.

(a)      To secure the DIP Obligations, the DIP Lender is hereby granted:

i.      a first priority, perfected security interest in and lien on, under section 364(c)(2) of the Bankruptcy Code, all of the Collateral of the Debtor and the Debtor's estate that, on or as of the Filing Date, is not subject to valid, perfected and non-avoidable liens and excluding the NMTC Proceeds; provided however, that any such lien shall not extend to any leasehold where the terms of the lease would prohibit the imposition of such lien, but provided further that such lien shall extend to the proceeds of any such leasehold;

ii.      a second priority, perfected security interest in and lien on, under section 364(c)(3) of the Bankruptcy Code, upon all of the Collateral of the Debtor and of the Debtor's estate that is, as of the Filing Date, subject to valid, perfected and non-avoidable liens in favor of third parties except as set forth in subparagraph (iii) below, provided however, that nothing in the subparagraph shall alter the terms of the Intercreditor Agreement, which terms prevail;

iii.      a first priority, perfected priming security interest in and lien on, under section 364(d)(1) of the Bankruptcy Code, all Collateral that also constitutes Prepetition Collateral, in all cases senior to (A) the Existing Liens, (B) the Workers Lien and (C) all other liens and obligations secured by the Prepetition Collateral on a *pari passu* or junior basis to the Existing Liens (collectively the "Prepetition Primed Obligations").

(b)      The liens created as described in clauses (i), (ii) and (iii) above (the "Postpetition Liens") shall cover all property and assets of the Debtor and its estate (now or hereafter acquired and all proceeds thereof), including (x) property or assets that do not secure the Prepetition Primed Obligations, and (y) claims and causes of action under Sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code (the "Avoidance Actions") and the proceeds thereof, but do not include the NMTC Proceeds.

(c)      The Postpetition Liens shall be effective immediately upon the entry of this Interim Order.

(d)    Except as provided in this Interim Order, the Postpetition Liens shall not at any time be (i) made subject or subordinated to or made *pari passu* with any other lien, security interest or claim existing as of the Filing Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code.

(e)    The Postpetition Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the date of this Interim Order without the necessity of execution by the Debtor or the filing or recordation of mortgages, security agreements, pledge agreements, financing agreements, financing statements or other agreements, such that no additional steps need be taken by the DIP Lender to perfect such interests.  Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for the Debtor to pledge, grant, mortgage, sell, assign or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the DIP Lender a priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by the Debtor in favor of the DIP Lender, in accordance with the terms of the DIP Loan Agreement and the other DIP Documents.

(f)    The Postpetition Liens, Superpriority Claim and other rights, benefits and remedies granted under this Interim Order to the DIP Lender shall continue in this Chapter 11 Case, in any superseding case under the Bankruptcy Code resulting from conversion of this Chapter 11 Case (the "Superseding Case") to the extent permitted by applicable law, and, to the extent permitted by applicable law, following any dismissal of this Chapter 11 Case, and such liens and claims shall maintain their priority as provided in this Interim Order until all the DIP

- 16 -

1   Obligations have been indefeasibly paid in full in cash and completely satisfied and the DIP

2   Lender's commitments have been terminated in accordance with the DIP Documents.

3       7.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms of this Interim Order

4   and the Budget, the Debtor is authorized to use Cash Collateral in which the Prepetition Lender

5   may have an interest, but only in accordance with the terms, conditions and limitations set forth

6   in this Interim Order and/or the DIP Documents.  Any dispute in connection with the use of

7   Cash Collateral shall be heard by the Court.  Notwithstanding anything in this Interim Order to

8   the contrary, the Debtor's authority to use Cash Collateral shall not begin until such time as all

9   conditions precedent to the initial borrowing under the DIP Facility have been satisfied and shall

10  automatically terminate without any further action by this Court or the DIP Lender, and the

11  Debtor shall be immediately prohibited from using such Cash Collateral upon the earliest to

12  occur of (the "<u>Cash Collateral Termination Date</u>"): (a) 30 days after the date of entry of this

13  Interim Order, unless the Final Order shall have been entered by the Court on or before such

14  date in accordance with the DIP Loan Agreement, (b) such earlier date on which the DIP Loans

15  shall become due and payable in accordance with the terms of this Interim Order and/or the DIP

16  Documents, and (c) the date on which all commitments have been terminated under this Interim

17  Order and/or the DIP Documents as a result of the occurrence of an Event of Default.

18      (a)    <u>Fees</u>.  All fees paid and payable and costs and/or expenses reimbursed or

19  reimbursable by the Debtor to the DIP Lender are hereby approved.  The Debtor shall promptly

20  pay all such fees, costs and expenses on demand, without the necessity of any further

21  application with the Court for approval or payment of such fees, costs or expenses.

22  Notwithstanding anything to the contrary herein, the fees, costs and expenses (other than those

23  of professionals retained by the DIP Lender) of the DIP Lender, whether incurred prior to or

24  after the Filing Date shall be deemed fully earned, non-refundable, irrevocable and non-

25  avoidable as of the date of this Interim Order; <u>provided</u> that with respect to fees and expenses of

26  professionals of the DIP Lender, such professionals shall submit copies of their invoices to the

27  Debtor, the Creditors' Committee and the United States Trustee and, provided that no objection

28  to such fees or expenses is raised within 10 days of the provision of such invoice, the Debtor

shall promptly pay such fees and expenses which shall, upon payment, be deemed fully earned, non-refundable, irrevocable and non-avoidable.  All unpaid fees, costs and expenses shall be included and constitute part of the principal amount of the DIP Obligations and be secured by the Postpetition Liens.  For the avoidance of doubt, and without limiting any of the forgoing or any other provision of this Interim Order, the fees referenced in section 2.10 of the DIP Loan Agreement are, upon entry of this Interim Order, and irrespective of any subsequent order approving or denying the Financing or any other financing pursuant to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the Bankruptcy Code, and deemed fully earned, indefeasibly paid, non-refundable, irrevocable and non-avoidable as of the date of this Interim Order.

8.    Authority to Execute and Deliver Necessary Documents.

(a)    All of the Postpetition Liens and Lender Protection Liens described herein shall be effective and perfected as of the Interim Order Entry Date and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements.

(b)    The Debtor is hereby further authorized to perform all of its obligations under the DIP Documents and such other agreements as may be required by the DIP Documents to give effect to the terms of the financing provided for therein and in this Interim Order, and to perform all acts required under the DIP Documents and this Interim Order.

(c)    The Debtor shall execute all documents and take all actions required to effectuate the DIP Documents.

(d)    All obligations under the DIP Documents shall constitute valid and binding obligations of each of the Obligors enforceable against each of them, and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order.  No obligation, payment, transfer or grant of a security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law or subject to avoidance,

- 18 -

reduction, setoff, recoupment, offset, recharacterization, subordination (whether

equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance,

impairment or any other challenges under the Bankruptcy Code or any other applicable

law or regulation by any person or entity.

9.       Amendments, Consents, Waivers and Modifications.  The Debtor, with the

express written consent of the DIP Lender, may enter into any amendments, consents, waivers

or modifications to the DIP Documents that are not materially adverse to the Debtor without the

need for further notice and hearing or any order of this Court, provided that such amendments,

consents, waivers or modifications do not (i) shorten maturity, (ii) increase commitments or the

rate of interest payable under the DIP Documents, (iii) require the payment of any new or

additional fee, (iv) change any Event of Default, add any covenants or amend the covenants in

the DIP Documents, in each case as applicable to the Obligors, in any such case to be materially

more restrictive; provided, however, that a copy of any such amendment, consent, waiver or

other modification shall be filed with the Court and served by the Debtor on the U.S. Trustee,

the Creditors' Committee and Workers.  No consent shall be implied by any other action,

inaction or acquiescence of the DIP Lender.

10.      Protections for Prepetition Lender.  Subject to subsequent Court order on

entitlement to adequate protection and the application of the components of adequate protection

that has been provided, the Prepetition Lender is hereby granted the following protections

(collectively, the "Prepetition Lender Protection"), pursuant to sections 361, 507, 363(e) and

364(d)(1) of the Bankruptcy Code or otherwise, with respect to its prepetition security interests

in the Prepetition Collateral for the consent of such Prepetition Lender to (i) the priming

effectuated by the DIP Facility, (ii) the use of their Prepetition Collateral (including Cash

Collateral), and (iii) the transactions contemplated by the DIP Facility, and as adequate

protection for the diminution in the value (each such diminution, a "Diminution in Value") of

the Existing Liens, whether or not such Diminution in Value results from the sale, lease or use

by the Debtor of the Prepetition Collateral (including, without limitation, Cash Collateral), the

priming of the Existing Liens or the stay of enforcement of any prepetition security interest

arising from section 362 of the Bankruptcy Code or otherwise ((a) through (c) below shall be referred to collectively as the "Lender Protection Obligations"):

(a)     Lender Protection Liens.  The Prepetition Lender shall be granted, for the reasons set forth above in this paragraph 10, effective and perfected as of the date of this Interim Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements, valid, perfected, postpetition security interests in and liens on all of the Collateral of the Debtor and its estate, including without limitation the Avoidance Actions and the proceeds thereof (together, the "Lender Protection Liens"), subject and subordinate only to (x) the Permitted Encumbrances, (y) the Postpetition Liens securing the DIP Facility, and (z) the terms of the Intercreditor Agreement.  The Lender Protection Liens shall not at any time be (i) made subject or subordinated to, or pari passu with, any other lien, security interest or claim existing as of the Filing Date or created under section 363 or 364(d) of the Bankruptcy Code or otherwise, except to the extent set forth in the Intercreditor Agreement or (ii) subject to paragraph 21 hereof, subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code.

(b)     Superpriority Administrative Expense Claim.  The Prepetition Lender shall be granted, for the reasons set forth above in this paragraph 10, a superpriority administrative expense claim immediately junior to the Superpriority Claim held by the DIP Lender, provided that no entity shall receive or retain any payments, property or other amounts in respect of superpriority claims relating to such Prepetition Primed Obligations unless and until the obligations under the DIP Facility have indefeasibly been paid in cash in full.  For the avoidance of doubt, the superpriority claim set forth in this paragraph 10(b) may be satisfied from the proceeds of the Avoidance Actions if the DIP Obligations have been satisfied in full, provided however, that no person or entity (other than the DIP Lender) shall receive the proceeds of Avoidance Actions until such time as all Lender Protection Obligations have been satisfied in full.  For the avoidance

- 20 -

of doubt, nothing in this subparagraph shall abrogate, limit or otherwise diminish, alter,

modify or otherwise impact or affect any other term or condition of this Interim DIP

Order or any right of the DIP Lender or the Prepetition Lender (or any finding with

respect thereto) pursuant to this Interim Order (including, without limitation, paragraphs

F, G, H, I, J, K, L, 2, 3, 5, 6, 8, 11,16 or 32 hereof), the Bankruptcy Code (including,

without limitation section 364(e) of the Bankruptcy Code) or applicable law.

       (c)     As further compensation for the consensual use of the Prepetition

Collateral (including Cash Collateral) by the Debtor for the reasons set forth above in

this paragraph 10, and in accordance with sections 361, 363(e) and 364(d) of the

Bankruptcy Code, the Prepetition Lender or the respective professional identified below

shall receive from the Debtor or the Debtor shall comply with the following covenants

(as applicable):

          i.     <u>Interest Payments</u>.  The Prepetition Lender shall receive from the Debtor (i) upon the entry of the Interim Order, immediate cash payment of all accrued and unpaid interest and fees at the non-default rates provided for in the Prepetition Loan Documents and all other accrued and unpaid fees and disbursements owing to the Prepetition Lender under the Prepetition Loan Documents and incurred prior to the Filing Date, and (ii) on the first business day of each month beginning on August 2, 2010, all accrued but unpaid interest and fees under the Prepetition Loan Documents for the preceding calendar month with respect to the Prepetition Indebtedness that has not been refinanced with the proceeds of the DIP Facility at the non-default contract rate applicable on the Filing Date under the Prepetition Loan Documents; provided that the Prepetition Lender reserves the right to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for in the Prepetition Loan Documents, and for the payment of any other amounts provided for in the Prepetition Loan Documents;

         ii.     <u>Fees and Expenses</u>.  Current cash payments payable under the Prepetition Loan Agreement shall be made to the Prepetition Lender under the Prepetition Loan Agreement for of all reasonable fees and expenses payable to any agent under the Prepetition Loan Agreement, including, but not limited to, the fees and disbursements of  professionals, including, without limitation Kramer Levin Naftalis & Frankel LLP and each local counsel of the Prepetition Lender, in each case in connection with the Prepetition Lender under the Prepetition Loan Documents, and in each case promptly upon receipt of invoices; <u>provided</u> that with respect to fees and expenses of professionals, such professionals

- 21 -

shall submit copies of their invoices to the Debtor, the Creditors' Committee and the United States Trustee and, provided that no objection is raised to such fees or expenses within 10 days of the provision of such invoice, the Debtor shall promptly pay such fees and expenses which shall, upon payment be deemed fully earned, non-refundable, irrevocable and non-avoidable;

iii.    Plan Timeline.  The Debtor shall file with the Court on or before August 12, 2010, a plan of reorganization and related disclosure statement that, subject to approval of such provision by Final Order, must be acceptable in all respects to the Lender; such disclosure statement shall be approved by this Court not later than the date that is 36 days after such plan of reorganization and disclosure statement are so filed; an order of this Court confirming such plan of reorganization shall be entered not later than the date that is 36 days after the disclosure statement is so approved; and such plan of reorganization shall be substantially consummated pursuant to such confirmation order not later than the date that is 10 days after such confirmation order is so entered.

iv.    Chief Restructuring Officer.  The Debtor shall file a motion on or before July 29, 2010, seeking authority to retain a chief restructuring officer or similar individual, the identity and terms of which are acceptable to the Prepetition Lender in all respects, and an order authorizing such retention shall be entered not later than August 27.

v.    Financial Reporting.  The Debtor shall continue to provide the Prepetition Lender with financial and other reporting substantially in compliance with the Prepetition Loan Agreement and any reporting described herein or in the DIP Documents.

(d)    Reservation of Rights.  Notwithstanding any other provision hereof to the contrary, the grant of Lender Protection Obligations to the Prepetition Lender pursuant hereto is without prejudice to the right of the Prepetition Lender to seek different or additional adequate protection.  Except as expressly provided herein, nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Lender.  The consent of the Prepetition Lender to the priming of the Existing Liens by the DIP Liens (a) is limited solely to the DIP Financing and does not extend to any other postpetition financing the Debtor may subsequently propose to enter into and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Lender that, absent such consent, its interests in the Prepetition Collateral would be adequately protected pursuant to this

900200.00001/95029190v.1

Interim Order.  Nothing in this Interim Order shall constitute an admission that the

Prepetition Lender is not entitled to payment under section 506(b) of the Bankruptcy

Code.

      11.    <u>Perfection of Postpetition Liens and Lender Protection Liens</u>.

      (a)    The DIP Lender and the Prepetition Lender are hereby authorized, but not

required, to file or record financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments in any jurisdiction, or take possession

of or control over, or take any other action in order to validate and perfect the liens and

security interests granted to them hereunder, in each case without the necessity to pay

any mortgage recording fee or similar fee or tax. Whether or not the DIP Lender or the

Prepetition Lender shall, in their sole discretion, choose to file such financing

statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments, or take possession of or control over, or otherwise confirm perfection of the

liens and security interests granted to them hereunder, such liens and security interests

shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to

challenge dispute or subordination, at the time and on the date of entry of this Interim

Order.  The Debtor shall, if requested, execute and deliver to the DIP Lender and the

Prepetition Lender all such agreements, mortgages, financing statements, instruments

and other documents as the DIP Lender and the Prepetition Lender may reasonably

request to more fully evidence, confirm, validate, perfect, preserve and enforce the

Postpetition Liens and the Lender Protection Liens.  All such documents will be deemed

to have been recorded and filed as of the Filing Date.

      (b)    A certified copy of this Interim Order may, in the discretion of the DIP

Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of

such financing statements, mortgages, notices of lien or similar instruments, and all

filing offices are hereby directed to accept such certified copy of this Interim Order for

filing and recording.

12.    <u>Application of Proceeds</u>.  The Debtor is hereby directed to remit (as and when required by the DIP Documents and this Interim Order) to the DIP Lender one-hundred percent (100%) of all collections on, and proceeds of, the Collateral (including without limitation the Prepetition Collateral), but excluding the NMTC Proceeds), including, but not limited to, all accounts receivable collections, proceeds of sales of inventory, fixed assets and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Filing Date come into the possession or control of the Debtor or to which the Debtor shall become entitled at any time, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Lender to retain and apply all collections, remittances and proceeds of the Collateral in accordance with the DIP Documents, without further order of this Court.

13.    <u>Access to Collateral</u>.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Lender contained in this Interim Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon one (1) business day's written notice to the landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Documents or a default by the Debtor of any of its obligations under this Interim Order has occurred and is continuing, the DIP Lender (i) may, subject only to any separate agreement by and between the applicable landlord or licensor and the DIP Lender (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtor for the purpose of exercising any remedy with respect to Collateral located thereon, and (ii) subject to applicable law, shall be entitled to all of the Debtor's rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtor, which are owned by or subject to a lien of any third party and which are used by the Debtor in its business, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder, <u>provided</u>, <u>however</u>, that the DIP Lender shall pay only rent and additional rent, fees, royalties or other obligations of the Debtor that first

- 24 -

arise after the DIP Lender's written notice referenced above and that are payable during the

period of such occupancy or use by the DIP Lender, as the case may be, calculated on a *per*

*diem* basis.  To the extent applicable law prohibits the forgoing access or use of rights, the DIP

Lender shall have the right to an expedited hearing on appropriate notice to obtain Court

authorization to obtain such access and/or use such rights.   Nothing herein shall require the

Debtor or the DIP Lender to assume any lease or license under section 365(a) of the Bankruptcy

Code as a precondition to the rights afforded to the DIP Lender in this paragraph.

14.    <u>Cash Management Systems</u>.  The Debtor is authorized to maintain its cash

management system in a manner consistent with the DIP Documents and the order of this Court

approving the maintenance of the Debtor's cash management system, <u>provided</u>, <u>however</u>, that

such order is on terms and conditions (i) acceptable to the DIP Lender, and (ii) to the extent that

it is not inconsistent with the terms specified herein, consistent with the DIP Documents.

15.    <u>Automatic Stay Modified</u>.  The automatic stay provisions of section 362 of the

Bankruptcy Code hereby are, to the extent applicable, vacated and modified to the extent

necessary without the need for any further order of this Court:

(a)    whether or not a default, Default, an Event of Default under the DIP

Documents, or a default by the Debtor of any of its obligations under this Interim Order

has occurred, to require all cash, checks or other collections or proceeds from Collateral

(exclusive of NMTC Proceeds ) received by the Debtor to be deposited in accordance

with the requirements of the DIP Documents, and to apply any amounts so deposited and

other amounts paid to or received by the DIP Lender, under the DIP Documents in

accordance with any requirements of the DIP Documents without further order of this

Court; and

(b)    following a default, Default or an Event of Default under the DIP

Documents or a default by the Debtor of any of its obligations under this Interim Order,

and subject to expedited review by this Court on appropriate notice to the Debtor, the

U.S. Trustee, the Creditors' Committee and Workers, the DIP Lender is authorized to

exercise any and all of their rights and remedies in accordance with the terms of the DIP

Documents and to take all actions required or permitted by the DIP Documents without necessity of further Court orders; provided however, that this Interim Order shall not prejudice the rights of any party-in-interest to oppose the exercise of the DIP Lender's remedies; and provided further, that the only issue that may be raised by any entity in opposition thereto shall be whether a default, Default or Event of Default has in fact occurred and is continuing, and all entities hereby waive their right to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit or restrict or delay the exercise or benefit of, the rights and remedies of the DIP Lender under the DIP Documents or this Interim Order, except to seek a ruling as to whether a default, Default or Event of Default has occurred.

16.    Subsequent Reversal or Modification.  This Interim Order is entered pursuant to, inter alia, section 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Borrower to the DIP Lender and the Prepetition Lender prior to the date of receipt by the DIP Lender of written notice of the effective date of such action or (ii) the validity and enforceability of any lien, claim or priority authorized or created under this Interim Order or pursuant to the DIP Documents.  Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Borrower to the DIP Lender or the Prepetition Lender prior to written notice to the DIP Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender and the Prepetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the DIP Documents with respect to all such indebtedness, obligations or liability.

17.    Restriction on Use of Lenders' Funds.  Notwithstanding anything herein to the contrary, no Collateral, proceeds thereof, Cash Collateral, Prepetition Collateral, proceeds thereof, proceeds of the Financing may be used by the Debtor, its estate, the Creditors'

1   Committee, any trustee or examiner appointed in this Chapter 11 Case or any chapter 7 trustee,

2   or any other person, party or entity, in any jurisdiction, directly or indirectly (a) to request

3   authorization to obtain postpetition financing (whether equity or debt) or other financial

4   accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other

5   than (i) from the DIP Lender or (ii) if such financing is sufficient to indefeasibly pay all DIP

6   Obligations in full in cash and such financing is immediately so used; (b) to assert, join,

7   commence, support, investigate or prosecute any action for any claim, counter-claim, action,

8   cause of action, proceeding, application, motion, objection, defense or other contested matter

9   seeking any order, judgment, determination or similar relief against, or adverse to the interests

10  of, in any capacity, the Releasees, with respect to any transaction, occurrence, omission or

11  action, including, without limitation, (i) any action arising under the Bankruptcy Code; (ii) any

12  so-called "lender liability" claims and causes of action; (iii) any action with respect to the

13  validity and extent of the DIP Obligations, the Superpriority Claims, the Lender Protection

14  Obligations or the Prepetition Indebtedness, or the validity, extent, perfection and priority of the

15  Postpetition Liens, the Existing Liens or the Lender Protection Liens; (iv) any action seeking to

16  invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether

17  equitable, contractual or otherwise), recoup against, disallow, impair, raise any defenses, cross-

18  claims or counter claims or raise any other challenges under the Bankruptcy Code or any other

19  applicable law or regulation against or with respect to the Postpetition Liens, the Superpriority

20  Claims,  the Lender Protection Obligations, the Prepetition Liens or the Lender Protection Liens

21  in whole or in part; (v) appeal or otherwise challenge this Interim Order, the Final Order, the

22  DIP Documents or any of the transactions contemplated herein or therein; and/or (vi) any action

23  that has the effect of preventing, hindering or delaying (whether directly or indirectly) the DIP

24  Lender or the Prepetition Lender in respect of their liens and security interests in the Collateral

25  or the Prepetition Collateral or any of their rights, powers or benefits hereunder or in the

26  Prepetition Loan Documents or the DIP Documents; and/or (c) to pay any claim of a prepetition

27  creditor except in accordance with the DIP Documents and the Budget.  Any claim incurred in

28  connection with any activities described in subparagraph (b) of this paragraph 17 shall not

1    constitute an allowed administrative expense claim for purposes of section 1129(a)(9)(A) of the

2    Bankruptcy Code.

3        18.    <u>No Liens</u>.  No lien or security interest shall be granted by the Debtor with respect

4    to any Collateral, including without limitation the Avoidance Actions and proceeds thereof,

5    without the prior written consent of the DIP Lender and further order of this Court.

6        19.    <u>Claims Stipulation Investigation Period Reservation of Rights</u>.  Except as

7    expressly set forth below in the immediately following sentence, the stipulations set forth in

8    paragraph E of this Interim Order (together the "<u>Claims Stipulation</u>") and all of the terms and

9    conditions hereof shall be immediately and irrevocably binding on all persons and entities.

10    Notwithstanding anything herein or in the DIP Documents to the contrary, until the day that is

11    45 days from the Filing Date (as such date may be extended by the DIP Lender or by the Court

12    for cause shown, the "<u>Investigation Termination Date</u>"), the Creditors' Committee and any other

13    party in interest with proper standing shall be entitled to investigate the accuracy of the Claims

14    Stipulation (but solely with respect to the Debtor and its estate) against the Prepetition Lender;[3]

15    <u>provided</u>, <u>however</u>, that nothing contained in this paragraph shall alter the restrictions contained

16    in paragraph 17 hereof.  Any assertion of claims or causes of action of the Debtor or its estate

17    against the Prepetition Lender must be made by (i) commencing an adversary proceeding or (ii)

18    filing motion to obtain standing to pursue such an action (which motion attaches the complaint

19    or pleading that would initiate such action) on or before the Investigation Termination Date, and

20    each Claim Stipulation shall remain binding and in full force and effect until a final order has

21    been entered invalidating such Claim Stipulation, and following the entry of such a final order,

22    such Claim Stipulation shall be invalidated only to the extent provided for in such final order.  If

23    no such action or motion is filed on or before the Investigation Termination Date, all persons

24    and entities shall be forever barred from bringing or taking such action and the Claims

25    Stipulations shall be permanently and irrevocably binding upon all persons and entities.  Any

26    Claim Stipulation that is not expressly challenged in an adversary proceeding (or with respect to

27    _____

28    [3]        Nothing herein shall be interpreted as conferring on any person or entity standing to pursue any claim,
            cause of action or take any action on behalf of the Debtor or its estate.

- 28 -

which authority to obtain standing has not been requested as set forth above) or contested matter, as appropriate, before the Investigation Termination Date shall remain in full force and effect and shall permanently and irrevocably bind all entities and persons, despite the filing of any other adversary proceeding or motion in accordance with this paragraph.

20.    Collateral Rights.  In the event that any person or entity that holds a lien or security interest in Collateral of the Debtor or its estate or Prepetition Collateral (exclusive of the NMTC Proceeds), which lien or security interest is junior and/or subordinate to the Postpetition Liens in such Collateral of the Debtor or its estate or Prepetition Collateral, receives or is paid the proceeds of such Collateral of the Debtor or its estate or Prepetition Collateral, or receives any other payment or distribution with respect thereto from any other source (except with respect to Workers, as provided in the Intercreditor Agreement), prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Documents and the Prepetition Indebtedness under the Prepetition Loan Documents, and termination of the commitments in accordance with the DIP Documents and the Prepetition Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral of the Debtor or its estate  in trust for the DIP Lender, and shall immediately turnover such proceeds to the DIP Lender for application in accordance with the DIP Documents and this Interim Order.

21.    Prohibition on Additional Liens.  Except as provided in the DIP Documents and/or this Interim Order, the Debtor shall be enjoined and prohibited from, at any time during this Chapter 11 Case until such time as the DIP Obligations have been indefeasibly paid in full, granting liens on the Collateral or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to, pari passu with or junior to the liens granted to the DIP Lender, the Lender Protection Liens or the Existing Liens, except in accordance with the DIP Documents, the Prepetition Loan Documents and this Interim Order.

22.    No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender or the Prepetition Lender may have to bring or be heard on any matter brought before this Court.

23.    <u>Sale/Conversion/Dismissal/Plan</u>.

(a)    No order providing for the sale of all or substantially all of the assets of the Debtor under section 363 of the Bankruptcy Code shall be entered by the Court unless, in connection and concurrently with any such event, the proceeds of such sale shall be used to satisfy, in cash, the DIP Obligations in accordance with the DIP Documents; and such sale is expressly permitted under the DIP Documents.

(b)    No motion shall be filed by the Debtor seeking dismissal or conversion of this Chapter 11 Case under section 305 or 1112 of the Bankruptcy Code, or seeking appointment of a chapter 11 trustee or an examiner with expanded powers, unless and until (x) the DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Documents are terminated in accordance therewith, or (y) the DIP Lender expressly consents in writing.  If an order dismissing or converting this Chapter 11 Case under section 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered, and unless otherwise agreed to by the DIP Lender, such order shall provide that (i) the Postpetition Liens, Superpriority Claim and the Lender Protection Obligations granted hereunder and in the DIP Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order until all DIP Obligations and Prepetition Indebtedness are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Documents and the Prepetition Loan Documents are terminated in accordance with the DIP Documents and the Prepetition Loan Documents, (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Postpetition Liens, the Lender Protection Liens, the Superpriority Claim and the Lender Protection Obligations, and (iii) all postpetition indebtedness, obligation or liability incurred by the Debtor to the DIP Lender and the Prepetition Lender prior to the date of such order, including without limitation, the DIP Obligations, shall be governed in all respects by the original provisions of this Interim Order, and the Lender

- 30 -

1   and the Prepetition Lender shall be entitled to all the rights, remedies, privileges and

2   benefits granted herein and in the DIP Documents with respect to all such indebtedness,

3   obligations or liability.

4         24.   <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the

5   express terms or provisions of any of the DIP Documents, the Motion, any other order of this

6   Court or any other agreements, on the one hand, and (b) the terms and provisions of this Interim

7   Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined

8   in" or "as more fully described in" the DIP Documents, the terms and provisions of this Interim

9   Order shall govern.

10         25.   <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are

11   created hereunder for the benefit of any third party, any creditor or any direct, indirect or

12   incidental beneficiary.

13         26.   <u>Rights Under Section 363(k)</u>.  The full amount of the DIP Obligations and the

14   Prepetition Indebtedness may be used to "credit bid" for the assets and property of the Debtor as

15   provided for in section 363(k) of the Bankruptcy Code without the need for further Court order

16   authorizing the same.

17         27.   <u>Headings</u>.  Section headings used herein are for convenience only and are not to

18   affect the construction of or to be taken into consideration in interpreting this Interim Order.

19         28.   <u>Final Hearing Date</u>.  The Final Hearing to consider the entry of the Final Order

20   approving the relief sought in the Motion shall be held on August 13, 2010, at 9:00 a.m. before

21   the Honorable Geraldine Mund, at the United States Bankruptcy Court for the Central District of

22   California, San Fernando Valley Division.

23         29.   <u>No Consent</u>.  No action, inaction or acquiescence by the DIP Lender or the

24   Prepetition Lender, including funding the Debtor's ongoing operations under this Interim Order,

25   shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP

26   Lender or the Prepetition Lender to a charge against the Collateral pursuant to sections 506(c),

27   552(b) or 105(a) of the Bankruptcy Code.  In no event shall either the DIP Lender or the

28

Prepetition Lender be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

30.    <u>Waiver</u>.  Effective upon entry of this Interim Order, no person or entity shall be entitled, directly or indirectly (a) subject to approval by the Final Order, and except as expressly provided by paragraph 4 of this Interim Order, to charge or recover from the Collateral, whether by operation of section 105, 506(c) or 552(b) of the Bankruptcy Code or otherwise, with respect to the DIP Obligations, the Prepetition Primed Obligations, the Existing Liens on the Prepetition Collateral, or the liens or claims granted in paragraphs 5, 6 and 10 of this Interim Order, or (b) to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of Collateral or Property after an Event of Default under the DIP Documents, or termination or breach under the DIP Documents or this Interim Order.  For the avoidance of doubt no party shall be entitled to charge or recover against the Collateral or otherwise receive a distribution pursuant to sections 105, or 552(b) of the Bankruptcy Code until such time as all DIP Obligations have been satisfied in full.

31.    <u>Adequate Notice</u>.  The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the Local Bankruptcy Rules, and was adequate and sufficient.  Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required.  The Debtor shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties, any known entity effected by the terms of the Final Order, and any other entity requesting notice after the entry of this Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be <u>actually received</u> no later than seven (7) days prior to the Final Hearing by the following: (i) counsel to the Debtor, Ezra Brutzkus Gubner LLP, 21650 Oxnard Street , Suite 500, Woodland Hills, CA 91367, Attn: Robyn B. Sokol; (ii) counsel to the DIP Lender, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York  10036, Attn: Robert T. Schmidt, and Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 1460, Los Angeles, California  90067, Attn:  Michael I. Gottfried; (iii) counsel to the United

States Trustee, the Office of the United States Trustee, 21051 Warner Center Lane, Suite 115,

Woodland Hills, CA 91367; and (iv) any counsel to the Creditors' Committee.

32.    <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions

of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest

in this Chapter 11 Case, including, without limitation, the Borrower, the DIP Lender, the Lender

Protection Parties, any Committee or examiner appointed in this Chapter 11 Case, and the

Debtor, and their respective successors and assigns (including any trustee or fiduciary

hereinafter appointed as a legal representative of the Debtor or with respect to the property of

the estate of the Debtor), whether in this Chapter 11 Case, in any Successor Case or upon any

dismissal of any such chapter 11 or chapter 7 case, and shall inure to the benefit of the DIP

Lender, the Lender Protection Parties and the Debtor and their respective successors and

assigns, *provided*, *however*, that the consent of the DIP Lender and the Prepetition Lender to

permit the use of Cash Collateral and the agreement of the DIP Lender to extend financing shall

terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers,

or similar responsible person appointed for the Debtor's estate.  In determining to make any

loan (whether under the DIP Loan Agreement, a promissory note or otherwise), to permit the

use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to

this Interim Order or the DIP Documents, the DIP Lender, the Prepetition Lender and the

Lender Protection Parties shall not (i) subject to the entry of the Final Order, be deemed to be in

control of the operations of the Borrower, or (ii) owe any fiduciary duty to the Borrower or its

creditors, shareholders or estate.  Except as expressly provided in paragraph 19 of this Interim

Order, each stipulation, admission and agreement contained in this Interim Order shall also be

binding upon all other parties in interest, including without limitation the Creditors' Committee,

under all circumstances and for all purposes.

/ / /

/ / /

/ / /

- 33 -

1          33.      <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce

2    this Interim Order according to its terms.

3

4                                              ###

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    DATED: July 30, 2010                          _____
                                                   United States Bankruptcy Judge
24

25

26

27

28

900200.00001/95029190v.1

| In re:  PACIFICA MESA STUDIOS LLC | CHAPTER: **11** |
|---|---|
| Debtor(s). | CASE NUMBER: 1:10-bk-18827-GM |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.  Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Blank Rome LLP, 1925 Century Park East, Suite, 1900, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as <u>INTERIM ORDER (I) AUTHORIZING DEBTOR (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364, (B) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING CERTAIN PROTECTIONS TO PREPETITION LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)</u> will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address(es) indicated below:

☐ Service information continued on attached page

**II.   SERVED VIA OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On July 28, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Blvd., Suite 342
Woodland Hills, CA  91367-6606

☐ Service information continued on attached page

**III.   SERVED BY EMAIL** (indicate method for each person or entity served):
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 28, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 28, 2010 | Michelle L. Smith | /s/ Michelle L. Smith |
|---|---|---|
| Date | Type Name | Signature |

| In re:   PACIFICA MESA STUDIOS LLC | CHAPTER: **11** |
|---|---|
| Debtor(s). | CASE NUMBER: 1:10-bk-18827-GM |

**<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):**

- Margaux Ross, Staff Attorney     margaux.ross@usdoj.gov
- Robert T. Schmidt, Esq.    rschmidt@kramerlevin.com
- Linda S. Koffman, Esq.     lkoffman@ghplaw.com
- Richard Burstein     rburstein@ebg-law.com, ecf@ebg-law.com
- Michael I Gottfried     mgottfried@lgbfirm.com, msaldana@lgbfirm.com
- Mark J. Nora, Esq.     mnora@polsinelli.com
- Monika J. Machen, Esq.     mmachen@polsinelli.com
- Louis Puccini, Jr., Esq.     puccinilaw@puccinilaw.com
- Robyn B Sokol     rsokol@ebg-law.com
- Jennifer Long     JLong@ebg-law.com

- 2 -

900200.00001/95029190v.1

| | |
|---|---|
| In re:   PACIFICA MESA STUDIOS LLC | CHAPTER: **11** |
| Debtor(s). | CASE NUMBER: 1:10-bk-18827-GM |

### NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (specify)   <u>INTERIM ORDER (I) AUTHORIZING DEBTOR (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364, (B) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING CERTAIN PROTECTIONS TO PREPETITION LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)</u> was entered on the date indicated as entered on the first page of this judgment or order and will be served in the manner indicated below:

**I.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**: Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of July 28, 2010, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☒ Service information continued on attached page

**II.   SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III.   TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

900200.00001/95029190v.1

| In re:   PACIFICA MESA STUDIOS LLC | CHAPTER: **11** |
|---|---|
| Debtor(s). | CASE NUMBER: 1:10-bk-18827-GM |

**ADDITIONAL SERVICE INFORMATION (if needed):**

- Richard Burstein    rburstein@ebg-law.com, ecf@ebg-law.com
- Sara Chenetz    chenetz@blankrome.com
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com
- Steven T Gubner    sgubner@ebg-law.com, ecf@ebg-law.com
- Peter F Jazayeri    jazayeri@blankrome.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

900200.00001/95029190v.1