1  STEVEN T. GUBNER - Bar No. 156593
   RICHARD D. BURSTEIN - Bar No. 56661
2  ROBYN SOKOL - Bar No. 159506
   TALIN KESHISHIAN - Bar No. 201830
3  EZRA BRUTZKUS GUBNER LLP
   21650 Oxnard Street, Suite 500
4  Woodland Hills, CA  91367
   Telephone:  818.827.9000
5  Facsimile:  818.827.9099
   Email:       sgubner@ebg-law.com
6                rburstein@ebg-law.com
                 rsokol@ebg-law.com
7                tkeshishian@ebg-law.com

8  Attorneys for Debtor, Pacifica Mesa Studios, LLC

**FILED & ENTERED**

AUG 17 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY ogier        DEPUTY CLERK

9            **UNITED STATES BANKRUPTCY COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11            **SAN FERNANDO VALLEY DIVISION**

12

13  In re                                         Case No. 1:10-bk-18827-GM

14  PACIFICA MESA STUDIOS, LLC, dba              Chapter 11
    Albuquerque Studios dba ABQ Studios,
15                                               **FINAL ORDER (I) AUTHORIZING
           Debtor and Debtor-in-Possession      DEBTOR (A) TO OBTAIN
16                                               POSTPETITION FINANCING
                                                 PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
17                                               AND 364, (B) TO USE CASH
                                                 COLLATERAL PURSUANT TO 11 U.S.C.
18                                               § 363, AND (II) GRANTING CERTAIN
                                                 PROTECTIONS TO PREPETITION
19                                               LENDER PURSUANT TO 11 U.S.C. §§ 361,
                                                 362, 363, AND 364**
20

21                                               **Date:**  August 13, 2010
                                                 **Time:**  9:00a.m.
22                                               **Place:**  Courtroom 303
                                                 United States Bankruptcy Court
23                                               21041 Burbank Boulevard
                                                 Woodland Hills, CA 91367
24

25       Upon consideration of the motion (the "Motion")[1], dated July 21, 2010, of Pacifica Mesa

26  Studios, LLC (the "Debtor" or the "Borrower") in the above-captioned case (the "Chapter 11

27  _____

28  [1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in
         the Motion or the DIP Loan Agreement, as applicable.

1    Case") pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11

2    U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and

3    9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local

4    Rules for the Bankruptcy Court for the Central District of California, San Fernando Valley

5    Division, seeking, among other things:

6             (i)      The Court's authorization for the Debtor to obtain postpetition financing (the

7    "Financing"), consisting of a superpriority priming loan facility (the "DIP Facility") in an

8    aggregate principal amount of up to $85,000,000 (the "DIP Commitment"), to be secured by

9    liens on all of the property, assets and interests in property or assets of the Debtor and the

10   Debtor's "estate" (as defined in the Bankruptcy Code), in each case of any kind or nature

11   whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or

12   created, including, without limitation, all accounts, inventory, goods, contract rights, instruments,

13   documents, chattel paper, patents, trademarks, copyrights and licenses therefor, general

14   intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-

15   of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases

16   (and proceeds from the disposition thereof), money, investment property, deposit accounts, all

17   commercial tort claims and other causes of action (including any and all actions arising under the

18   Bankruptcy Code), Cash Collateral (as that term is defined below), and all cash and non-cash

19   proceeds, rents, products, substitutions, accessions and profits of any of the collateral described

20   above (collectively, with respect to all such entities, the "Collateral"), and entered into among

21   the Debtor, as debtor and debtor-in-possession under the Bankruptcy Code, LV Holdings, LLC,

22   as successor in interest to Amalgamated Bank of New York, as trustee of Longview Ultra I

23   Construction Loan Investment Fund (the "DIP Lender"), a portion of which Financing shall be

24   used to refinance the Prepetition Indebtedness (as defined herein), subject to approval of any

25   such refinancing in the Final Order;

26           (ii)     The Court's authorization for the Debtor and the Guarantors (collectively, the

27   "Obligors"), as the case may be, to execute and deliver additional final documentation consistent

28   with the terms of (or as may be required by) the Debtor-In-Possession Financing Agreement (as

1   the same may be amended or modified, the "DIP Loan Agreement") in the form attached to this

2   Order (the "Final Order") as Exhibit A, the Reaffirmation of Guaranties in the form attached to

3   this Final Order as Exhibit B (the "Guaranties"), and all additional documentation (the "DIP

4   Loan Documents" and together with the DIP Loan Agreement and the Guaranties, the "DIP

5   Documents"), and to perform such other and further acts as may be required in connection with

6   the DIP Documents;

7         (iii)    The Court's authorization for the use of proceeds of the Financing extended to the

8   Borrower as expressly provided in the DIP Documents (A) to pay costs, fees and expenses of the

9   DIP Lender and the Prepetition Lender, as provided for in this Final Order and the DIP

10   Documents, as well as all scheduled payments of interest and principal thereunder, (B) to provide

11   working capital and for other general corporate purposes of the Borrower, and (C) to pay

12   administration costs of this Chapter 11 Case and claims or amounts approved by the Bankruptcy

13   Court; provided, that payments under clause (A) above shall be made from the proceeds of the

14   DIP Facility irrespective of the then-applicable Budget;

15         (iv)    The Court authorizing the grant to the DIP Lender and any other parties referred

16   to in the collateral documents (collectively, the "DIP Secured Parties") with respect to the DIP

17   Obligations (as defined below), in accordance with the relative priorities as set forth more fully

18   below:

19            (a) pursuant to Bankruptcy Code section 364(c)(1), joint and several superpriority

20               administrative expense claim status in the Chapter 11 Case, which claims in

21               respect of the DIP Facility shall be superior to any and all other claims;

22            (b) pursuant to Bankruptcy Code section 364(c)(2), a first priority lien on all

23               unencumbered assets of the Borrower and its estate (now or hereafter acquired

24               and all proceeds thereof);

25            (c) pursuant to Bankruptcy Code section 364(c)(3), a junior lien on all

26               encumbered assets (except as set forth in subparagraph (d) below) of the

27               Borrower and its estate (now or hereafter acquired and all proceeds thereof);

28               and

1    (d) pursuant to Bankruptcy Code section 364(d), a first priority priming lien on all

2        assets of the Borrower and its estate (now or hereafter acquired and all

3        proceeds thereof) that were subject to the liens of the Prepetition Primed

4        Obligations (as defined below) as of the Filing Date (as defined below);

5    (v) The Court granting protection to the secured parties whose liens and security

6 interests are being primed by the Financing as set forth below (such parties, the "Lender

7 Protection Parties");

8    (vi) The Court's authorization for the Debtor to use any Cash Collateral in which

9 Lender Protection Parties may have an interest and the granting of certain protections to the

10 Lender Protection Parties with respect to, inter alia, use of their Cash Collateral in accordance

11 with the Budget and the use (and any Diminution in Value (as defined below)) of their collateral;

12    (vii) The Court vacate and modify the automatic stay imposed by section 362 of the

13 Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

14 the DIP Documents and this Final Order;

15    (viii) The Court waiving any applicable stay (including under Bankruptcy Rule 6004)

16 and providing for immediate effectiveness of the Interim Order (as defined herein);

17    (ix) Pursuant to Bankruptcy Rule 4001, the Court order that an interim hearing on the

18 Motion be held before this Court to consider entry of the Interim Order, authorizing that during

19 the period commencing on the date (the "Interim Order Entry Date") of this Court's entry of the

20 Interim Order and ending on the earlier of (a) the date this Court enters the Final Order and (b)

21 the occurrence of the DIP Loan Maturity Date (as defined in the DIP Loan Agreement) (such

22 period, the "Interim Period"), a portion of the DIP Commitments shall be borrowed by the

23 Borrower (the "Initial Availability"), subject to (i) delivery by the Borrower of the Budget, and

24 (ii) compliance with the terms, conditions and covenants contained in the definitive documents

25 relating to the DIP Facility, including, without limitation, the credit agreements, guarantees,

26 security agreements, pledge agreements and all other DIP Documents, in an amount equal to the

27 lesser of $1,100,000 or such other amount as may be approved by order of this Court, to be made

28 available during the Interim Period in accordance with the Budget; and

1    (x)    The Court schedule a final hearing to consider entry of the Final Order granting

2    the relief requested in the Motion on a final basis and authorizing the balance of the borrowings

3    under the DIP Documents on a final basis, as set forth in the Motion and DIP Documents filed

4    with this Court.

5    The interim hearing on the Motion having been held on July 23, 2010 (the "Interim

6    Hearing"), and the court having entered  the Interim Order (I) Authorizing Debtor (A) to Obtain

7    Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, And 364, (B) to Use Cash

8    Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Certain Protections to Prepetition Lender

9    Pursuant to 11 U.S.C. §§ 361, 362, 363, And 364, and (III) Scheduling Final Hearing Pursuant to

10    Bankruptcy Rules 4001(B) and (C) (the "Interim Order"); and based upon all of the pleadings

11    filed with the Court, the evidence presented at the Interim Hearing and at the hearing held on

12    August 13, 2010 (the "Final Hearing") and the entire record herein; and the Court having heard

13    and resolved or overruled all objections to the relief requested in the Motion; and the Court

14    having noted the appearances of all parties in interest; and it appearing that the relief requested in

15    the Motion is in the best interests of the Debtor, its estate and its creditors; and the Debtor having

16    provided notice of the Motion as set forth in the Motion and it appearing that no further or other

17    notice of the Motion need be given; and after due deliberation and consideration, and sufficient

18    cause appearing therefor:

19    **BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE
FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF**
20    **FACT AND CONCLUSIONS OF LAW:[2]**

21    A.    Filing Date.  On July 20, 2010 (the "Filing Date"), the Borrower commenced its

22    Chapter 11 Case by filing a voluntary petition for relief under the Bankruptcy Code.  The

23    Borrower is operating its business and managing its affairs as a debtor-in-possession pursuant to

24    sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed

25    in the Chapter 11 Case.

26    B.    Jurisdiction; Venue.  The Court has jurisdiction over this case, the parties and the

27    Debtor's property pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C.

28

1  §157(b)(2)(D).  Venue of the Chapter 11 Case and the Motion is proper under 28 U.S.C. §§ 1408

2  and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363

3  and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and the

4  Local Bankruptcy Rules.

5      C.    Committee Formation.  No official committee of unsecured creditors (the

6  "Creditors' Committee") has yet been appointed in this Chapter 11 Case.

7      D.    Prepetition Loan Documents.  The Borrower is Borrower under that certain

8  Construction Loan Agreement dated as of June 17, 2006 (as amended, restated, supplemented or

9  otherwise modified from time to time, the "Prepetition Loan Agreement" and, together with the

10 Security Documents (as defined therein), the "Prepetition Loan Documents"), between the

11 Debtor and Amalgamated Bank of New York, as Trustee of Longview Ultra I Construction Loan

12 Investment Fund (the "Prepetition Lender").  Pursuant to the Prepetition Loan Documents, the

13 Prepetition Lender provided the Debtor with loans in the aggregate principal amount of

14 approximately $74,135,131.40.  For purposes of this Final Order, the term "Prepetition

15 Indebtedness" shall mean all amounts owed, as of the Filing Date, to the Prepetition Lender

16 under the Prepetition Loan Documents, including, without limitation, all Obligations (as defined

17 in the Prepetition Loan Agreement) of the Debtor thereunder.

18     E.    Stipulations.  In requesting the Financing under the DIP Documents, the Debtor

19 permanently, immediately and irrevocably acknowledges, represents, stipulates and agrees that,

20 in each case subject to paragraph 19 of this Final Order:

21     (i)    in entering into the DIP Documents, and as consideration therefor, the Debtor

22 hereby agrees that until such time as all DIP Obligations are indefeasibly paid in full in cash and

23 completely satisfied and the commitments are terminated in accordance with the terms of the

24 DIP Documents, the Debtor will not (except as expressly permitted by this Final Order, the DIP

25 Documents and the Prepetition Loan Documents) in any way prime or seek to prime (or

26 otherwise cause to be subordinated in any way) the liens, security interests or claims provided

27

28
---

² Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

under this Final Order or the Prepetition Loan Documents to the DIP Lender or the Prepetition

Lender by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or

claim pursuant to section 364 of the Bankruptcy Code or otherwise;

(ii)    as of the Filing Date, (A) the aggregate principal amount of the Prepetition

Indebtedness is not less than $74,135,131.40, plus all accrued and unpaid interest, plus all fees,

costs and expenses incurred in connection therewith, and all other Obligations under the

Prepetition Loan Agreement, (B) all of the Prepetition Indebtedness is unconditionally owing by

the Debtor to the Prepetition Lender, and (C) none of the claims in respect of the Prepetition

Indebtedness is or shall be subject to any avoidance, reduction, set off, offset, recharacterization,

subordination (whether equitable, contractual or otherwise), counterclaim, cross-claims,

recoupment, defense, disallowance, impairment or any other challenges under the Bankruptcy

Code or any other applicable law or regulation by any person or entity, and the Prepetition Loan

Documents constitute the legal, valid and binding obligations of the Debtor and its estate and are

enforceable against the Debtor and its estate in accordance with the terms of the Prepetition Loan

Documents;

(iii)    the liens securing the Prepetition Indebtedness (the "Existing Liens") (A)

constitute valid, binding, enforceable and perfected first priority liens on the collateral as

described in the Prepetition Loan Documents (the "Prepetition Collateral") that, prior to the entry

of this Final Order, were subject only to the Permitted Encumbrances (as defined in the

Mortgage (as defined in the Prepetition Loan Agreement) and the terms of that certain Amended

and Restated Intercreditor and Subordination Agreement, dated January 31, 2008 (the

"Intercreditor Agreement") between the Prepetition Lender and Workers Realty Trust II, L.P.

("Workers"), and (B) are not, and shall not be, subject to avoidance, reduction, setoff,

recoupment, offset, recharacterization, subordination (whether equitable, contractual or

otherwise), counterclaims, cross-claims, defenses, disallowance, impairment or any other

challenges under the Bankruptcy Code or any other applicable law or regulation by any person or

entity;

1    (iv)  neither the DIP Lender nor the Prepetition Lender is a control person or insider of

2 the Debtor by virtue of any of the actions taken with respect to, in connection with, related to, or

3 arising from the DIP Documents and/or the Prepetition Loan Documents;

4    (v)  as of the date hereof, there exists no claim or cause of action against the

5 Prepetition Lender or the DIP Lender with respect to, in connection with, related to, or arising

6 from the Prepetition Loan Agreement or the Financing  that may be asserted by any Obligor or

7 any other person or entity; .

8    (vi)  as of the date hereof, there were no other liens on or security interests in the

9 Collateral except for the Existing Liens, liens in favor of Workers (the "Workers Lien"), which

10 liens are contractually subordinated to the Existing Liens, and except to the extent set forth in the

11 Intercreditor Agreement, to the extent such liens are determined to be valid, perfected, binding

12 and enforceable, the Permitted Encumbrances; and

13    (vii)  the Obligors forever and irrevocably release, discharge and acquit the former,

14 current or future DIP Lender and Prepetition Lender, and each of their respective former, current

15 or future officers, employees, directors, agents, representatives, owners, members, partners,

16 financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys,

17 affiliates and predecessors in interest (collectively, the "Releasees") of and from any and all

18 claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness

19 and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses,

20 damages, injuries, attorneys' fees, costs, expenses and judgments of every type, whether known,

21 unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent,

22 pending or threatened, including, without limitation, all legal and equitable theories of recovery

23 arising under common law, statute or regulation or by contract, of every nature and description,

24 arising out of, in connection with, or relating to the Financing, the DIP Documents, the

25 Prepetition Loan Documents, the Prepetition Primed Obligations or the transactions

26 contemplated hereunder or thereunder including, without limitation, (i) any so-called "lender

27 liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of

28 action arising under title 11 of the United States Code, and (iii) any and all claims and causes of

1 action with respect to the validity, priority, perfection or avoidability of the liens or claims of the

2 Prepetition Lender and/or the DIP Lender.

3       F.    <u>Cash Collateral</u>.  For purposes of this Final Order, the term "<u>Cash Collateral</u>"

4 shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in

5 which the Prepetition Lender under the Prepetition Loan Agreement has a lien, security interest

6 or other interest (including, without limitation, any adequate protection liens or security

7 interests), whether existing on the Filing Date, arising pursuant to this Final Order or otherwise.

8 The Debtor requires the use of Cash Collateral to operate its business.  Without the use of Cash

9 Collateral, the Debtor will not be able to meet its cash requirements for working capital needs

10 and an immediate shutdown of the Debtor's business will ensue.  The DIP Lender and the

11 Prepetition Lender do not consent to the use of Cash Collateral except on the terms and for the

12 purposes specified herein.

13       G.    <u>Lender Protection</u>.  The Lender Protection Obligations (as defined below) are

14 sufficient to protect the interests of the Lender Protection Parties in the collateral securing the

15 Prepetition Primed Obligations (as defined below) and no further adequate protection is presently

16 required under sections 363, 364 or any other provision of the Bankruptcy Code.

17       H.    <u>Purpose and Necessity of Financing</u>.  The Borrower requires the financing

18 described in the Motion and as expressly provided in the DIP Documents (i) to pay costs, fees

19 and expenses of the DIP Lender and the Prepetition Lender as provided for in the Interim Order

20 and the DIP Documents, as well as all scheduled payments of interest and principal thereunder,

21 (ii) to provide working capital and for other general corporate purposes of the Debtor, and (iii) to

22 pay administration costs of this Chapter 11 Case and claims or amounts approved by the

23 Bankruptcy Court, <u>provided</u> that payments of the above-described amounts in clause (i) shall be

24 made from the proceeds of the DIP Facility irrespective of the then-applicable Budget.  If the

25 Borrower does not obtain authorization to borrow under the DIP Loan Agreement and the DIP

26 Loans are not approved, the Borrower will suffer immediate and irreparable harm.  The

27 Borrower is unable to obtain adequate unsecured credit allowable as an administrative expense

28 under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the

1   Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Documents.

2   A loan facility in the amount provided by the DIP Documents is not available to the Borrower

3   without granting the DIP Lender superpriority claims, liens and security interests, pursuant to

4   sections 364(c)(1), (2), (3) and 364(d) of the Bankruptcy Code, as provided in this Final Order

5   and the DIP Documents.  After considering all alternatives, the Borrower has concluded, in the

6   exercise of its prudent business judgment, that the loan facility provided under the DIP

7   Documents represents the best and only working capital financing available to it at this time.

8   The DIP Facility is the only loan available to the Borrower and the Borrower has been

9   unsuccessful in its attempts to find any alternative financing.  Additionally, the terms of the

10  Financing and the use of Cash Collateral are fair and reasonable and reflect the Borrower's

11  exercise of prudent business judgment consistent with its fiduciary duties.

12          I.      Good Cause.  Based upon the record presented to the court by the Debtor, it

13  appears that the ability of the Debtor to obtain sufficient working capital and liquidity under the

14  DIP Documents, and use of Cash Collateral, is vital to the Debtor, its estate and its creditors.

15  The liquidity to be provided under the DIP Documents and through the use of the Cash Collateral

16  will enable the Debtor to continue to operate its business in the ordinary course and preserve the

17  value of its business.  The Debtor's estate will be immediately and irreparably harmed if this

18  Final Order is not entered.  Good cause has, therefore, been shown for the relief sought in the

19  Motion.

20          J.      Good Faith.  The Financing and the DIP Documents have been negotiated in good

21  faith and at arm's-length among the Obligors and the DIP Lender, and all of the obligations and

22  indebtedness arising under, in respect of or in connection with the Financing and the DIP

23  Documents, including without limitation, all loans made to and guarantees issued by the

24  Obligors pursuant to the DIP Documents, and any other obligations under the DIP Documents

25  (all of the foregoing collectively, the "DIP Obligations"), shall be deemed to have been extended

26  by the DIP Lender and its affiliates in good faith, as that term is used in section 364(e) of the

27  Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the

28  Bankruptcy Code, and the DIP Obligations, the Postpetition Liens (as defined below), the

1   Superpriority Claim (as defined below), and the Lender Protection Obligations shall be entitled

2   to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions,

3   benefits and privileges of this Final Order regardless of whether this Final Order is subsequently

4   reversed, vacated, modified or otherwise is no longer in full force and effect or the Chapter 11

5   Case is subsequently converted or dismissed.

6        K.    Consideration.  The Borrower will receive and has received fair consideration and

7   reasonably equivalent value in exchange for access to the DIP Loans, the use of Cash Collateral

8   and all other financial accommodations provided under the DIP Documents and this Final Order.

9        L.    Entry of Final Order.  The permission granted herein to enter into the DIP

10  Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm

11  to the Debtor.  This Court concludes that entry of this Final Order is in the best interests of the

12  Debtor's estate and creditors as its implementation will, among other things, allow for the

13  continued flow of supplies and services to the Debtor necessary to sustain the operation of the

14  Debtor's existing business and further enhance the Debtor's prospects for a successful

15  restructuring.  Based upon the foregoing findings, acknowledgements and conclusions, and upon

16  the record made before this Court at the Interim Hearing and the Final Hearing, and good and

17  sufficient cause appearing therefore;

18  **IT IS HEREBY ORDERED:**

19       1.    Disposition.  The Motion is granted on a final basis and on the terms set forth

20  herein.  Any objections to the Motion that have not previously been withdrawn, waived, settled,

21  sustained or resolved and all reservations of rights included therein are hereby denied and

22  overruled on their merits with prejudice.

23       2.    Effectiveness.  This Final Order shall constitute findings of fact and conclusions

24  of law and shall take effect and be fully enforceable *nunc pro tunc* to the Filing Date

25  immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h),

26  6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil

27  Procedure, this Final Order shall be immediately effective and enforceable upon its entry and

28  there shall be no stay of execution or effectiveness of this Final Order.

3.    <u>Authorization of the Financing and DIP Loan Agreement.</u>

(a)    The Debtor was by the Interim Order and is hereby authorized to execute and enter into the DIP Documents, and the DIP Documents are hereby approved and incorporated herein by reference in their entirety.  The DIP Documents and this Final Order shall govern the financial and credit accommodations to be provided to the Debtor by the DIP Lender.

(b)    The Borrower is hereby authorized to borrow money pursuant to the DIP Documents in an amount not to exceed $3,000,000 which shall be used solely as expressly provided in the DIP Documents and the Budget (i) to pay costs, fees and expenses of the DIP Lender and the Prepetition Lender as provided for in the Interim Order and the DIP Documents, as well as the scheduled payments of principal and interest thereunder, (ii)  to provide working capital and for other general corporate purposes of the Debtor, and (iii) to pay administration costs of this Chapter 11 Case and claims or amounts approved by the Bankruptcy Court.

(c)    In furtherance of the foregoing and without further approval of this Court, the Borrower and the Prepetition Lender were by the Interim Order and hereby are authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be required or necessary for the Debtor's performance of its obligations under the Financing, including, without limitation:

(i) the execution, delivery and performance of the DIP Documents, including, without limitation, the DIP Loan Agreement, any guarantees, any security and pledge agreements and any mortgages contemplated thereby,

(ii) the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents for, among other things, the purpose of adding additional financial institutions as DIP Lenders and

reallocating the commitments for the Financing among the DIP Lender, in each case in such form as the Debtor and the DIP Lender may agree;

(iii) the non-refundable payment of the fees referred to in the DIP Documents and costs and expenses as may be due in accordance with the DIP Documents, provided, however, that the fees and expenses of professionals employed pursuant to the DIP Documents are subject to the conditions contained in paragraph 7(a) of this Final Order, and

(iv) the performance of all other acts required under or in connection with the DIP Documents.

(d)    The DIP Documents constitute valid, binding and non-avoidable obligations of the Obligors enforceable against each person or entity party thereto in accordance with their respective terms and the terms of this Final Order for all purposes during the Chapter 11 Case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of this Chapter 11 Case.  No obligation, payment, transfer or grant of security under the DIP Documents or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment or any other challenges under the Bankruptcy Code or any other applicable law or regulation by any person or entity.

4.    Guaranties.  Nothing in this Final Order is intended to release or in any way modify the guaranties given to others who are not parties to this agreement or to affect their rights to pursue the Guarantors except to the extent that this would lead to a change in management or control of the Debtor.

5.    <u>Superpriority Claims</u>.  The DIP Lender is hereby granted an allowed superpriority

administrative expense claim (the "<u>Superpriority Claim</u>") pursuant to section 364(c)(1) of the

Bankruptcy Code for all DIP Obligations, having priority over any and all other claims against

the Debtor and its estate, now existing or hereafter arising, of any kind whatsoever, including,

without limitation, all administrative expenses of the kinds specified in or arising or ordered

under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the

Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment

lien or other non-consensual lien, levy or attachment, which Superpriority Claim shall be payable

from and have recourse to all prepetition and postpetition property of the Debtor and its estate

and all proceeds thereof.  Except as expressly set forth herein, no other superpriority claims shall

be granted or allowed in this Chapter 11 Case.  For the avoidance of doubt, the Superpriority

Claim may be satisfied from the proceeds of the Avoidance Actions (as defined herein), provided

however, that no person or entity (other than the DIP Lender in accordance with this paragraph)

shall receive the proceeds of Avoidance Actions until such time as all DIP Obligations have been

satisfied in full.  For the avoidance of doubt, nothing in this paragraph shall abrogate, limit or

otherwise diminish, alter, modify or otherwise impact or affect any other term or condition of

this Final Order or any right of the DIP Lender (or any finding with respect thereto) pursuant to

this Final Order (including, without limitation, paragraphs F, G, H, I, J, K, L, 2, 3, 5, 6, 8, 11,16

or 32 hereof), the Bankruptcy Code (including, without limitation section 364(e) of the

Bankruptcy Code) or applicable law.

6.    <u>Postpetition Liens</u>.

(a)    To secure the DIP Obligations, the DIP Lender was granted in the Interim

Order, and is hereby granted:

i.    a first priority, perfected security interest in and lien on, under

section 364(c)(2) of the Bankruptcy Code, all of the Collateral of the Debtor and the

Debtor's estate that, on or as of the Filing Date, is not subject to valid, perfected and non-

avoidable liens and excluding the NMTC Proceeds; <u>provided</u> <u>however</u>, that any such lien

shall not extend to any leasehold where the terms of the lease would prohibit the

-14-

imposition of such lien, but provided further that such lien shall extend to the proceeds of
any such leasehold;

   ii.  a second priority, perfected security interest in and lien on, under
section 364(c)(3) of the Bankruptcy Code, upon all of the Collateral of the Debtor and of
the Debtor's estate that is, as of the Filing Date, subject to valid, perfected and non-
avoidable liens in favor of third parties except as set forth in subparagraph (iii) below;
provided, however, that nothing in this subparagraph shall alter the terms of the
Intercreditor Agreement; and

   iii.  a first priority, perfected priming security interest in and lien on,
under section 364(d)(1) of the Bankruptcy Code, all Collateral that also constitutes
Prepetition Collateral, in all cases senior to (A) the Existing Liens, (B) the Workers' Lien
and (C) all other liens and obligations secured by the Prepetition Collateral on a *pari
passu* or junior basis to the Existing Liens (collectively the "Prepetition Primed
Obligations").

  (b)  The liens created as described in clauses (i), (ii) and (iii) above (the
"Postpetition Liens") shall cover all property and assets of the Debtor and its estate (now or
hereafter acquired and all proceeds thereof), including (x) property or assets that do not secure
the Prepetition Primed Obligations, and (y) claims and causes of action under Sections 502(d),
544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code (the "Avoidance Actions") and the
proceeds thereof, but do not include the NMTC Proceeds.

  (c)  The Postpetition Liens became effective immediately upon the entry of the
Interim Order, and will continue to be effective upon the entry of this Final Order.

  (d)  Except as provided in this Final Order, the Postpetition Liens shall not at
any time be (i) made subject or subordinated to or made *pari passu* with any other lien, security
interest or claim existing as of the Filing Date, or created under sections 363 or 364(d) of the
Bankruptcy Code or otherwise, or (ii) subject to any lien or security interest that is avoided and
preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code.

1          (e)        The Postpetition Liens shall be and hereby are fully perfected liens and

2    security interests, effective and perfected upon the date of this Final Order without the necessity

3    of execution by the Debtor or the filing or recordation of mortgages, security agreements, pledge

4    agreements, financing agreements, financing statements or other agreements, such that no

5    additional steps need be taken by the DIP Lender to perfect such interests.  Any provision of any

6    lease, loan document, easement, use agreement, proffer, covenant, license, contract,

7    organizational document or other instrument or agreement that requires the consent or approval

8    of one or more landlords, licensors or other parties, or requires the payment of any fees or

9    obligations to any governmental entity, non-governmental entity or any other person, in order for

10   the Debtor to pledge, grant, mortgage, sell, assign or otherwise transfer any fee or leasehold

11   interest or the proceeds thereof or other collateral, shall have no force or effect with respect to

12   the transactions granting the DIP Lender a priority security interest in such fee, leasehold or

13   other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof,

14   by the Debtor in favor of the DIP Lender, in accordance with the terms of the DIP Loan

15   Agreement and the other DIP Documents.

16          (f)        The Postpetition Liens, Superpriority Claim and other rights, benefits and

17   remedies granted under this Final Order to the DIP Lender shall continue in this Chapter 11

18   Case, in any superseding case under the Bankruptcy Code resulting from conversion of this

19   Chapter 11 Case (the "Superseding Case") to the extent permitted by applicable law, and, to the

20   extent permitted by applicable law, following any dismissal of this Chapter 11 Case, and such

21   liens and claims shall maintain their priority as provided in this Final Order until all the DIP

22   Obligations have been indefeasibly paid in full in cash and completely satisfied and the DIP

23   Lender's commitments have been terminated in accordance with the DIP Documents.

24          7.        Authorization to Use Cash Collateral.  Subject to the terms of this Final Order and

25   the Budget, the Debtor is authorized to use Cash Collateral in which the Prepetition Lender may

26   have an interest, but only in accordance with the terms, conditions and limitations set forth in this

27   Final Order and/or the DIP Documents.  Any dispute in connection with the use of Cash

28   Collateral shall be heard by the Court.  Notwithstanding anything in this Final Order to the

1  contrary, the Debtor's authority to use Cash Collateral shall not begin until such time as all

2  conditions precedent to the initial borrowing under the DIP Facility have been satisfied and shall

3  automatically terminate without any further action by this Court or the DIP Lender, and the

4  Debtor shall be immediately prohibited from using such Cash Collateral upon the earliest to

5  occur of (the "Cash Collateral Termination Date"): (a) such date on which the DIP Loans shall

6  become due and payable in accordance with the terms of this Final Order and/or the DIP

7  Documents, and (b) the date on which all commitments have been terminated under this Final

8  Order and/or the DIP Documents as a result of the occurrence of an Event of Default.

9             (a)      Fees.  All fees paid and payable and costs and/or expenses reimbursed or

10  reimbursable by the Debtor to the DIP Lender are hereby approved.  The Debtor shall promptly

11  pay all such fees, costs and expenses on demand, without the necessity of any further application

12  with the Court for approval or payment of such fees, costs or expenses.   Notwithstanding

13  anything to the contrary herein, the fees, costs and expenses (other than those of professionals

14  retained by the DIP Lender) of the DIP Lender, whether incurred prior to or after the Filing Date

15  were deemed fully earned, non-refundable, irrevocable and non-avoidable as of the date of the

16  Interim Order; provided that with respect to fees and expenses of professionals of the DIP

17  Lender, such professionals shall submit copies of their invoices to the Debtor, the Creditors'

18  Committee and the United States Trustee and, provided that no objection to such fees or

19  expenses is raised within 10 days of the provision of such invoice, the Debtor shall promptly pay

20  such fees and expenses which shall, upon payment, be deemed fully earned, non-refundable,

21  irrevocable and non-avoidable.  All unpaid fees, costs and expenses shall be included and

22  constitute part of the principal amount of the DIP Obligations and be secured by the Postpetition

23  Liens.  For the avoidance of doubt, and without limiting any of the forgoing or any other

24  provision of this Final Order, the fees referenced in section 2.10 of the DIP Loan Agreement

25  were, upon entry of the Interim Order, and irrespective of any subsequent order approving or

26  denying the Financing or any other financing pursuant to section 364 of the Bankruptcy Code,

27  fully entitled to all protections of section 364(e) of the Bankruptcy Code, and deemed fully

28

1    earned, indefeasibly paid, non-refundable, irrevocable and non-avoidable as of the date of the

2    Interim Order.

3          8.    Authority to Execute and Deliver Necessary Documents.

4          (a)    All of the Postpetition Liens and Lender Protection Liens described herein

5    were effective and perfected as of the Interim Order Entry Date, and continue to be effective and

6    perfected as of the date hereof, in each case without the necessity of the execution of mortgages,

7    security agreements, pledge agreements, financing statements or other agreements.

8          (b)    The Debtor is hereby further authorized to perform all of its obligations

9    under the DIP Documents and such other agreements as may be required by the DIP Documents

10   to give effect to the terms of the financing provided for therein and in this Final Order, and to

11   perform all acts required under the DIP Documents and this Final Order.

12         (c)    The Debtor shall execute all documents and take all actions required to

13   effectuate the DIP Documents.

14         (d)    All obligations under the DIP Documents shall constitute valid and

15   binding obligations of each of the Obligors enforceable against each of them, and each of their

16   successors and assigns, in accordance with their terms and the terms of this Final Order.  No

17   obligation, payment, transfer or grant of a security under the DIP Documents or this Final Order

18   shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any

19   applicable law or subject to avoidance, reduction, setoff, recoupment, offset, recharacterization,

20   subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims,

21   defenses, disallowance, impairment or any other challenges under the Bankruptcy Code or any

22   other applicable law or regulation by any person or entity.

23         9.    Amendments, Consents, Waivers and Modifications.  The Debtor, with the

24   express written consent of the DIP Lender, may enter into any amendments, consents, waivers or

25   modifications to the DIP Documents that are not materially adverse to the Debtor without the

26   need for further notice and hearing or any order of this Court, provided that such amendments,

27   consents, waivers or modifications do not (i) shorten maturity, (ii) increase commitments or the

28   rate of interest payable under the DIP Documents, (iii) require the payment of any new or

-18-

1  additional fee, or (iv) change any Event of Default, add any covenants or amend the covenants in

2  the DIP Documents, in each case as applicable to the Obligors, in any such case to be materially

3  more restrictive; provided, however, that a copy of any such amendment, consent, waiver or

4  other modification shall be filed with the Court and served by the Debtor on the U.S. Trustee and

5  the Creditors' Committee and Workers.  No consent shall be implied by any other action,

6  inaction or acquiescence of the DIP Lender.

7         10.     Protections for Prepetition Lender.  Subject to subsequent Court order on

8  entitlement to adequate protection and the application of the components of adequate protection

9  that has been provided, the Prepetition Lender is hereby granted the following protections

10  (collectively, the "Prepetition Lender Protection"), pursuant to sections 361, 507, 363(e) and

11  364(d)(1) of the Bankruptcy Code or otherwise, with respect to its prepetition security interests

12  in the Prepetition Collateral for the consent of such Prepetition Lender to (i) the priming

13  effectuated by the DIP Facility, (ii) the use of their Prepetition Collateral (including Cash

14  Collateral), and (iii) the transactions contemplated by the DIP Facility, and as adequate

15  protection for the diminution in the value (each such diminution, a "Diminution in Value") of the

16  Existing Liens, whether or not such Diminution in Value results from the sale, lease or use by the

17  Debtor of the Prepetition Collateral (including, without limitation, Cash Collateral), the priming

18  of the Existing Liens or the stay of enforcement of any prepetition security interest arising from

19  section 362 of the Bankruptcy Code or otherwise ((a) through (c) below shall be referred to

20  collectively as the "Lender Protection Obligations"):

21         (a)     Lender Protection Liens.  The Prepetition Lender shall be granted, for the

22  reasons set forth above in this paragraph 10, effective and perfected as of the date of the entry of

23  the Interim Order and without the necessity of the execution of mortgages, security agreements,

24  pledge agreements, financing statements or other agreements, valid, perfected, postpetition

25  security interests in and liens on all of the Collateral of the Debtor and its estate, including

26  without limitation the Avoidance Actions and the proceeds thereof (together, the "Lender

27  Protection Liens"), subject and subordinate only to (x) the Permitted Encumbrances, (y) the

28  Postpetition Liens securing the DIP Facility and (z) the terms of the Intercreditor Agreement.

The Lender Protection Liens shall not at any time be (i) made subject or subordinated to, or pari passu with, any other lien, security interest or claim existing as of the Filing Date or created under section 363 or 364(d) of the Bankruptcy Code or otherwise, except to the extent set forth in the Intercreditor Agreement, or (ii) subject to paragraph 21 hereof, subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code.

(b)        Superpriority Administrative Expense Claim.  The Prepetition Lender shall be granted, for the reasons set forth above in this paragraph 10, a superpriority administrative expense claim immediately junior to the Superpriority Claim held by the DIP Lender, provided that no entity shall receive or retain any payments, property or other amounts in respect of superpriority claims relating to such Prepetition Primed Obligations unless and until the obligations under the DIP Facility have indefeasibly been paid in cash in full.  For the avoidance of doubt, the superpriority claim set forth in this paragraph 10(b) may be satisfied from the proceeds of the Avoidance Actions if the DIP Obligations have been satisfied in full, provided however, that no person or entity (other than the DIP Lender) shall receive the proceeds of Avoidance Actions until such time as all Lender Protection Obligations have been satisfied in full.  For the avoidance of doubt, nothing in this subparagraph shall abrogate, limit or otherwise diminish, alter, modify or otherwise impact or affect any other term or condition of this Final DIP Order or any right of the DIP Lender or the Prepetition Lender (or any finding with respect thereto) pursuant to this Final Order (including, without limitation, paragraphs F, G, H, I, J, K, L, 2, 3, 5, 6, 8, 11,16 or 32 hereof), the Bankruptcy Code (including, without limitation section 364(e) of the Bankruptcy Code) or applicable law.

(c)        As further compensation for the consensual use of the Prepetition Collateral (including Cash Collateral) by the Debtor for the reasons set forth above in this paragraph 10, and in accordance with sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition Lender or the respective professional identified below shall receive from the Debtor or the Debtor shall comply with the following covenants (as applicable):

i.    <u>Interest Payments</u>.  The Prepetition Lender shall receive from the Debtor (i) upon the entry of the Interim Order, immediate cash payment of all accrued and unpaid interest and fees at the non-default rates provided for in the Prepetition Loan Documents and all other accrued and unpaid fees and disbursements owing to the Prepetition Lender under the Prepetition Loan Documents and incurred prior to the Filing Date, and (ii) on the first business day of each month beginning on August 2, 2010, all accrued but unpaid interest and fees under the Prepetition Loan Documents for the preceding calendar month with respect to the Prepetition Indebtedness that has not been refinanced with the proceeds of the DIP Facility at the non-default contract rate applicable on the Filing Date under the Prepetition Loan Documents; provided that the Prepetition Lender reserves the right to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for in the Prepetition Loan Documents, and for the payment of any other amounts provided for in the Prepetition Loan Documents;

ii.    <u>Fees and Expenses</u>.  Current cash payments payable under the Prepetition Loan Agreement shall be made to the Prepetition Lender under the Prepetition Loan Agreement for of all reasonable fees and expenses payable to any agent under the Prepetition Loan Agreement, including, but not limited to, the fees and disbursements of  professionals, including, without limitation Kramer Levin Naftalis & Frankel LLP and each local counsel of the Prepetition Lender, in each case in connection with the Prepetition Lender under the Prepetition Loan Documents, and in each case promptly upon receipt of invoices; <u>provided</u> that with respect to fees and expenses of professionals, such professionals shall submit copies of their invoices to the Debtor, the Creditors' Committee and the United States Trustee and, provided that no objection is raised to such fees or expenses within 10 days of the provision of such invoice, the Debtor shall promptly pay such fees and expenses which shall, upon payment be deemed fully earned, non-refundable, irrevocable and non-avoidable;

iii.    <u>Plan Timeline</u>.  The Debtor shall file with the Court on or before August 25, 2010, a plan of reorganization and related disclosure statement that must be acceptable in all respects to the Lender; such disclosure statement shall be approved by this Court not later than the date that is 36 days after such plan of reorganization and disclosure statement are so filed; an order of this Court confirming such plan of reorganization shall be entered not later than the date that is 36 days after the disclosure statement is so approved; and such plan of reorganization shall be substantially consummated pursuant to such confirmation order not later than the date that is 10 days after such confirmation order is so entered.

iv.    <u>Chief Restructuring Officer</u>.  The motion filed by the Debtor seeking authority to retain nunc pro tunc a chief restructuring officer or similar individual, the identity and terms of which are acceptable to the Prepetition Lender in all respects, shall be approved by an order of the Court entered not later than August 27.

v.      Financial Reporting.  The Debtor shall continue to provide the Prepetition Lender with financial and other reporting substantially in compliance with the Prepetition Loan Agreement and any reporting described herein or in the DIP Documents.

(d)      Reservation of Rights.  Notwithstanding any other provision hereof to the contrary, the grant of Lender Protection Obligations to the Prepetition Lender pursuant hereto is without prejudice to the right of the Prepetition Lender to seek different or additional adequate protection.  Except as expressly provided herein, nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Lender.  The consent of the Prepetition Lender to the priming of the Existing Liens by the DIP Liens (a) is limited solely to the DIP Financing and does not extend to any other postpetition financing the Debtor may subsequently propose to enter into and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Lender that, absent such consent, its interests in the Prepetition Collateral would be adequately protected pursuant to this Final Order.  Nothing in this Final Order shall constitute an admission that the Prepetition Lender is not entitled to payment under section 506(b) of the Bankruptcy Code.

11.      Perfection of Postpetition Liens and Lender Protection Liens..

(a)      The DIP Lender and the Prepetition Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case without the necessity to pay any mortgage recording fee or similar fee or tax. Whether or not the DIP Lender or the Prepetition Lender shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of the Interim Order.  The

1  Debtor shall, if requested, execute and deliver to the DIP Lender and the Prepetition Lender all

2  such agreements, mortgages, financing statements, instruments and other documents as the DIP

3  Lender and the Prepetition Lender may reasonably request to more fully evidence, confirm,

4  validate, perfect, preserve and enforce the Postpetition Liens and the Lender Protection Liens.

5  All such documents will be deemed to have been recorded and filed as of the Filing Date.

6         (b)    A certified copy of this Final Order may, in the discretion of the DIP

7  Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such

8  financing statements, mortgages, notices of lien or similar instruments, and all filing offices are

9  hereby directed to accept such certified copy of this Final Order for filing and recording.

10         12.   <u>Application of Proceeds</u>.  The Debtor is hereby directed to remit (as and when

11  required by the DIP Documents and this Final Order) to the DIP Lender one-hundred percent

12  (100%) of all collections on, and proceeds of, the Collateral (including without limitation the

13  Prepetition Collateral), but excluding the NMTC Proceeds, including, but not limited to, all

14  accounts receivable collections, proceeds of sales of inventory, fixed assets and any other assets,

15  including sales in and outside the ordinary course of business, and all other cash or cash

16  equivalents which shall at any time on or after the Filing Date come into the possession or

17  control of the Debtor or to which the Debtor shall become entitled at any time, and the automatic

18  stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP

19  Lender to retain and apply all collections, remittances and proceeds of the Collateral in

20  accordance with the DIP Documents, without further order of this Court.

21         13.   <u>Access to Collateral</u>.  Notwithstanding anything contained herein to the contrary,

22  and without limiting any other rights or remedies of the DIP Lender contained in the Interim

23  Order, this Final Order or the DIP Documents, or otherwise available at law or in equity, and

24  subject to the terms of the DIP Documents, upon one (1) business day's written notice to the

25  landlord, lienholder, licensor or other third party owner of any leased or licensed premises or

26  intellectual property that an Event of Default under the DIP Documents or a default by the

27  Debtor of any of its obligations under this Final Order has occurred and is continuing, the DIP

28  Lender (i) may, subject only to any separate agreement by and between the applicable landlord

or licensor and the DIP Lender (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtor for the purpose of exercising any remedy with respect to Collateral located thereon, and (ii) subject to applicable law, shall be entitled to all of the Debtor's rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtor, which are owned by or subject to a lien of any third party and which are used by the Debtor in its business, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder, provided, however, that the DIP Lender shall pay only rent and additional rent, fees, royalties or other obligations of the Debtor that first arise after the DIP Lender's written notice referenced above and that are payable during the period of such occupancy or use by the DIP Lender, as the case may be, calculated on a *per diem* basis.  To the extent applicable law prohibits the forgoing access or use of rights, the DIP Lender shall have the right to an expedited hearing on appropriate notice to obtain Court authorization to obtain such access and/or use such rights.   Nothing herein shall require the Debtor or the DIP Lender to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Lender in this paragraph.

14.    Cash Management Systems.  The Debtor is authorized to maintain its cash management system in a manner consistent with the DIP Documents and the order of this Court approving the maintenance of the Debtor's cash management system, provided, however, that such order is on terms and conditions (i) acceptable to the DIP Lender, and (ii) to the extent that it is not inconsistent with the terms specified herein, consistent with the DIP Documents.

15.    Automatic Stay Modified.  The automatic stay provisions of section 362 of the Bankruptcy Code hereby are, to the extent applicable, vacated and modified to the extent necessary without the need for any further order of this Court:

(a)    whether or not a default, Default, an Event of Default under the DIP Documents, or a default by the Debtor of any of its obligations under this Final Order has occurred, to require all cash, checks or other collections or proceeds from Collateral (exclusive of NMTC Proceeds) received by the Debtor to be deposited in accordance with the requirements

of the DIP Documents, and to apply any amounts so deposited and other amounts paid to or

received by the DIP Lender, under the DIP Documents in accordance with any requirements of

the DIP Documents without further order of this Court; and

        (b)     following a default, Default or an Event of Default under the DIP

Documents or a default by the Debtor of any of its obligations under this Final Order, and subject

to expedited review by this Court on appropriate notice to the Debtor, the U.S. Trustee, the

Creditors' Committee and Workers, the DIP Lender is authorized to exercise any and all of their

rights and remedies in accordance with the terms of the DIP Documents, and to take all actions

required or permitted by the DIP Documents without necessity of further Court orders; provided

however, that this Final Order shall not prejudice the rights of any party-in-interest to oppose the

exercise of the DIP Lender's remedies; and provided further, that the only issue that may be

raised by any entity in opposition thereto shall be whether a default, Default or Event of Default

has in fact occurred and is continuing, and all entities hereby waive their right to seek any relief,

whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair,

limit or restrict or delay the exercise or benefit of, the rights and remedies of the DIP Lender

under the DIP Documents or this Final Order, except to seek a ruling as to whether a default,

Default or Event of Default has occurred.

        16.    <u>Subsequent Reversal or Modification</u>.  This Final Order is entered pursuant to,

<u>inter alia</u>, section 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), granting

the DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all

of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that

action will not affect (i) the validity of any obligation, indebtedness or liability incurred

hereunder by the Borrower to the DIP Lender and the Prepetition Lender prior to the date of

receipt by the DIP Lender of written notice of the effective date of such action or (ii) the validity

and enforceability of any lien, claim or priority authorized or created under this Final Order or

pursuant to the DIP Documents.  Notwithstanding any such reversal, stay, modification or

vacatur, any postpetition indebtedness, obligation or liability incurred by the Borrower to the

DIP Lender or the Prepetition Lender prior to written notice to the DIP Lender of the effective

date of such action, shall be governed in all respects by the original provisions of this Final

Order, and the DIP Lender and the Prepetition Lender shall be entitled to all the rights, remedies,

privileges and benefits granted herein and in the DIP Documents with respect to all such

indebtedness, obligations or liability.

17.    <u>Restriction on Use of Lenders' Funds</u>.  Notwithstanding anything herein to the

contrary, no Collateral, proceeds thereof, Cash Collateral, Prepetition Collateral, proceeds

thereof, proceeds of the Financing may be used by the Debtor, its estate, the Creditors'

Committee, any trustee or examiner appointed in this Chapter 11 Case or any chapter 7 trustee,

or any other person, party or entity, in any jurisdiction, directly or indirectly (a) to request

authorization to obtain postpetition financing (whether equity or debt) or other financial

accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other

than (i) from the DIP Lender or (ii) if such financing is sufficient to indefeasibly pay all DIP

Obligations in full in cash and such financing is immediately so used; (b) to assert, join,

commence, support, investigate or prosecute any action for any claim, counter-claim, action,

cause of action, proceeding, application, motion, objection, defense or other contested matter

seeking any order, judgment, determination or similar relief against, or adverse to the interests

of, in any capacity, the Releasees, with respect to any transaction, occurrence, omission or

action, including, without limitation, (i) any action arising under the Bankruptcy Code; (ii) any

so-called "lender liability" claims and causes of action; (iii) any action with respect to the

validity and extent of the DIP Obligations, the Superpriority Claims, the Lender Protection

Obligations or the Prepetition Indebtedness, or the validity, extent, perfection and priority of the

Postpetition Liens, the Existing Liens or the Lender Protection Liens; (iv) any action seeking to

invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable,

contractual or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims or

counter claims or raise any other challenges under the Bankruptcy Code or any other applicable

law or regulation against or with respect to the Postpetition Liens, the Superpriority Claims,  the

Lender Protection Obligations, the Prepetition Liens or the Lender Protection Liens in whole or

in part; (v) appeal or otherwise challenge the Interim Order, this Final Order, the DIP Documents

1    or any of the transactions contemplated herein or therein; and/or (vi) any action that has the

2    effect of preventing, hindering or delaying (whether directly or indirectly) the DIP Lender or the

3    Prepetition Lender in respect of their liens and security interests in the Collateral or the

4    Prepetition Collateral or any of their rights, powers or benefits hereunder or in the Prepetition

5    Loan Documents or the DIP Documents; and/or (c) to pay any claim of a prepetition creditor

6    except in accordance with the DIP Documents and the Budget.  Any claim incurred in

7    connection with any activities described in subparagraph (b) of this paragraph 17 shall not

8    constitute an allowed administrative expense claim for purposes of section 1129(a)(9)(A) of the

9    Bankruptcy Code.

10    18.    No Liens.  No lien or security interest shall be granted by the Debtor with respect

11    to any Collateral, including without limitation the Avoidance Actions and proceeds thereof,

12    without the prior written consent of the DIP Lender and further order of this Court.

13    19.    Claims Stipulation Investigation Period Reservation of Rights.  Except as

14    expressly set forth below in the immediately following sentence, the stipulations set forth in

15    paragraph E of this Final Order (together the "Claims Stipulation") and all of the terms and

16    conditions hereof shall be immediately and irrevocably binding on all persons and entities.

17    Notwithstanding anything herein or in the DIP Documents to the contrary, until the day that is 45

18    days from the Filing Date (as such date may be extended by the DIP Lender or by the Court for

19    cause shown, the "Investigation Termination Date"), the Creditors' Committee and any other

20    party in interest with proper standing shall be entitled to investigate the accuracy of the Claims

21    Stipulation (but solely with respect to the Debtor and its estate) against the Prepetition Lender;[3]

22    provided, however, that nothing contained in this paragraph shall alter the restrictions contained

23    in paragraph 17 hereof.  Any assertion of claims or causes of action of the Debtor or its estate

24    against the Prepetition Lender must be made by (i) commencing an adversary proceeding or (ii)

25    filing motion to obtain standing to pursue such an action (which motion attaches the complaint or

26    pleading that would initiate such action) on or before the Investigation Termination Date, and

27

28    [3]    Nothing herein shall be interpreted as conferring on any person or entity standing to pursue
any claim, cause of action or take any action on behalf of the Debtor or its estate.

each Claim Stipulation shall remain binding and in full force and effect until a final order has

been entered invalidating such Claim Stipulation, and following the entry of such a final order,

such Claim Stipulation shall be invalidated only to the extent provided for in such final order.  If

no such action or motion is filed on or before the Investigation Termination Date, all persons and

entities shall be forever barred from bringing or taking such action and the Claims Stipulations

shall be permanently and irrevocably binding upon all persons and entities.  Any Claim

Stipulation that is not expressly challenged in an adversary proceeding (or with respect to which

authority to obtain standing has not been requested as set forth above) or contested matter, as

appropriate, before the Investigation Termination Date shall remain in full force and effect and

shall permanently and irrevocably bind all entities and persons, despite the filing of any other

adversary proceeding or motion in accordance with this paragraph.

20.    <u>Collateral Rights</u>.  In the event that any person or entity that holds a lien or

security interest in Collateral of the Debtor or its estate or Prepetition Collateral (exclusive of the

NMTC Proceeds), which lien or security interest is junior and/or subordinate to the Postpetition

Liens in such Collateral of the Debtor or its estate or Prepetition Collateral, receives or is paid

the proceeds of such Collateral of the Debtor or its estate or Prepetition Collateral, or receives

any other payment or distribution with respect thereto from any other source (except with respect

to Workers, as provided in the Intercreditor Agreement), prior to indefeasible payment in full in

cash and the complete satisfaction of all DIP Obligations under the DIP Documents and the

Prepetition Indebtedness under the Prepetition Loan Documents, and termination of the

commitments in accordance with the DIP Documents and the Prepetition Loan Documents, such

junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of

any such Collateral of the Debtor or its estate  in trust for the DIP Lender, and shall immediately

turnover such proceeds to the DIP Lender for application in accordance with the DIP Documents

and this Final Order.

21.    <u>Prohibition on Additional Liens</u>.  Except as provided in the DIP Documents

and/or this Final Order, the Debtor shall be enjoined and prohibited from, at any time during this

Chapter 11 Case until such time as the DIP Obligations have been indefeasibly paid in full,

1    granting liens on the Collateral or any portion thereof to any other entities, pursuant to section

2    364(d) of the Bankruptcy Code or otherwise, which liens are senior to, pari passu with or junior

3    to the liens granted to the DIP Lender, the Lender Protection Liens or the Existing Liens, except

4    in accordance with the DIP Documents, the Prepetition Loan Documents and this Final Order.

5        22.    No Waiver.  This Final Order shall not be construed in any way as a waiver or

6    relinquishment of any rights that the DIP Lender or the Prepetition Lender may have to bring or

7    be heard on any matter brought before this Court.

8        23.    Sale/Conversion/Dismissal/Plan.

9        (a)    No order providing for the sale of all or substantially all of the assets of

10   the Debtor under section 363 of the Bankruptcy Code shall be entered by the Court unless, in

11   connection and concurrently with any such event, the proceeds of such sale shall be used to

12   satisfy, in cash, the DIP Obligations in accordance with the DIP Documents; and (ii) such sale is

13   expressly permitted under the DIP Documents.

14       (b)    No motion shall be filed by the Debtor seeking dismissal or conversion of

15   this Chapter 11 Case under section 305 or 1112 of the Bankruptcy Code, or seeking appointment

16   of a chapter 11 trustee or an examiner with expanded powers, unless and until (x) the DIP

17   Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments

18   under the DIP Documents are terminated in accordance therewith, or (y) the DIP Lender

19   expressly consents in writing.  If an order dismissing or converting this Chapter 11 Case under

20   section 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11

21   trustee or an examiner with expanded powers is at any time entered, and unless otherwise agreed

22   to by the DIP Lender, such order shall provide that (i) the Postpetition Liens, Superpriority

23   Claim and the Lender Protection Obligations granted hereunder and in the DIP Documents shall

24   continue in full force and effect, remain binding on all parties-in-interest, and maintain their

25   priorities as provided in this Final Order until all DIP Obligations and Prepetition Indebtedness

26   are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP

27   Documents and the Prepetition Loan Documents are terminated in accordance with the DIP

28   Documents and the Prepetition Loan Documents, (ii) this Court shall retain jurisdiction,

notwithstanding such dismissal, for purposes of enforcing the Postpetition Liens, the Lender

Protection Liens, the Superpriority Claim and the Lender Protection Obligations, and (iii) all

postpetition indebtedness, obligation or liability incurred by the Debtor to the DIP Lender and

the Prepetition Lender prior to the date of such order, including without limitation, the DIP

Obligations, shall be governed in all respects by the original provisions of this Final Order, and

the Lender and the Prepetition Lender shall be entitled to all the rights, remedies, privileges and

benefits granted herein and in the DIP Documents with respect to all such indebtedness,

obligations or liability.

24.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express

terms or provisions of any of the DIP Documents, the Motion, any other order of this Court or

any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on

the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as

more fully described in" the DIP Documents, the terms and provisions of this Final Order shall

govern.

25.    <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are

created hereunder for the benefit of any third party, any creditor or any direct, indirect or

incidental beneficiary.

26.    <u>Rights Under Section 363(k)</u>.  The full amount of the DIP Obligations and the

Prepetition Indebtedness may be used to "credit bid" for the assets and property of the Debtor as

provided for in section 363(k) of the Bankruptcy Code without the need for further Court order

authorizing the same.

27.    <u>Headings</u>.  Section headings used herein are for convenience only and are not to

affect the construction of or to be taken into consideration in interpreting this Final Order.

28.    <u>No Consent</u>.  No action, inaction or acquiescence by the DIP Lender or the

Prepetition Lender, including funding the Debtor's ongoing operations under this Final Order,

shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP

Lender or the Prepetition Lender to a charge against the Collateral pursuant to sections 506(c),

552(b) or 105(a) of the Bankruptcy Code.  In no event shall either the DIP Lender or the

1    Prepetition Lender be subject in any way whatsoever to the equitable doctrine of "marshaling" or

2    any similar doctrine with respect to the Collateral.

3        29.    <u>Waiver</u>.  Effective upon entry of this Final Order, no person or entity shall be

4    entitled, directly or indirectly (a) except as expressly provided by paragraph 4 of this Final

5    Order, to charge or recover from the Collateral, whether by operation of section 105, 506(c) or

6    552(b) of the Bankruptcy Code or otherwise, with respect to the DIP Obligations, the Prepetition

7    Primed Obligations, the Existing Liens on the Prepetition Collateral, or the liens or claims

8    granted in paragraphs 5, 6 and 10 of this Final Order, or (b) to direct the exercise of remedies or

9    seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition

10   of Collateral or Property after an Event of Default under the DIP Documents, or termination or

11   breach under the DIP Documents or this Final Order.  For the avoidance of doubt no party shall

12   be entitled to charge or recover against the Collateral or otherwise receive a distribution pursuant

13   to sections 105, 506(c) or 552(b) of the Bankruptcy Code until such time as all DIP Obligations

14   have been satisfied in full.

15       30.    <u>Adequate Notice</u>.  The notice given by the Debtor of the Final Hearing was given

16   in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the Local Bankruptcy Rules, and

17   was adequate and sufficient.  Under the circumstances, no further notice of the request for the

18   relief granted at the Final Hearing is required.

19       31.    <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions

20   of this Final Order, including all findings herein, shall be binding upon all parties-in-interest in

21   this Chapter 11 Case, including, without limitation, the Borrower, the DIP Lender, the Lender

22   Protection Parties, any Committee or examiner appointed in this Chapter 11 Case, and the

23   Debtor, and their respective successors and assigns (including any trustee or fiduciary hereinafter

24   appointed as a legal representative of the Debtor or with respect to the property of the estate of

25   the Debtor), whether in this Chapter 11 Case, in any Successor Case or upon any dismissal of

26   any such chapter 11 or chapter 7 case, and shall inure to the benefit of the DIP Lender, the

27   Lender Protection Parties and the Debtor and their respective successors and assigns, *provided*,

28   *however*, that the consent of the DIP Lender and the Prepetition Lender to permit the use of Cash

1    Collateral and the agreement of the DIP Lender to extend financing shall terminate upon the

2    appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar

3    responsible person appointed for the Debtor's estate.  In determining to make any loan (whether

4    under the DIP Loan Agreement, a promissory note or otherwise), to permit the use of Cash

5    Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final

6    Order or the DIP Documents, the DIP Lender, the Prepetition Lender and the Lender Protection

7    Parties shall not (i) be deemed to be in control of the operations of the Borrower, or (ii) owe any

8    fiduciary duty to the Borrower or its creditors, shareholders or estate.  Except as expressly

9    provided in paragraph 19 of this Final Order, each stipulation, admission and agreement

10   contained in this Final Order shall also be binding upon all other parties in interest, including

11   without limitation the Creditors' Committee, under all circumstances and for all purposes.

12          32.    <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce

13   this Final Order according to its terms.

14   ###

15

16

17

18

19

20

21

22

23   DATED: August 17, 2010                                    _____

24                                                                     United States Bankruptcy Judge

25

26

27

28

| In re:<br>PACIFICA MESA STUDIOS, LLC, etc., et al.<br><br>Debtor(s). | CHAPTER  7<br>CASE NUMBER: 1:10-bk-18827-GM |
|---|---|

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367**

A true and correct copy of the foregoing document described as **FINAL ORDER (I) AUTHORIZING DEBTOR (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364, (B) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (II) GRANTING CERTAIN PROTECTIONS TO PREPETITION LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (“NEF”)** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) (“LBR”), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:** On **August 16, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows:

> Honorable Geraldine Mund
> United States Bankruptcy Court
> 21041 Burbank Boulevard, Suite 342
> Woodland Hills, CA  91367

☒ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 16, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:

Robert T. Schmidt, Esq. rschmidt@kramerlevin.com
Linda S. Koffman, Esq.  lkoffman@ghplaw.com
Mark J. Nora, Esq.       mnora@polsinelli.com
Michael I Gottfried   mgottfried@lgbfirm.com
Peter F Jazayeri    jazayeri@blankrome.com

Monika J. Machen, Esq.   mmachen@polsinelli.com
Louis Puccini, Jr., Esq.  puccinilaw@puccinilaw.com
Sara Chenetz    chenetz@blankrome.com
S. Margaux Ross    margaux.ross@usdoj.gov

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 16, 2010 | NIKOLA A. FIELDS | /s/ Nikola A. Fields |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| In re: Pacifica Mesa Studios, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:10-bk-18827-GM |

### NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **FINAL ORDER (I) AUTHORIZING DEBTOR (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364, (B) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (II) GRANTING CERTAIN PROTECTIONS TO PREPETITION LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364** was entered on the date indicated on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (**"**NEF**"**)** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **August 16, 2010**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Sara Chenetz                         chenetz@blankrome.com
- Michael I. Gottfried            mgottfried@lgbfirm.com, msaldana@lgbfirm.com
- Peter F. Jazayeri                 jazayeri@blankrome.com
- S. Margaux Ross                 margaux.ross@usdoj.gov
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐  Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐  Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

Robert T. Schmidt, Esq. rschmidt@kramerlevin.com    Monika J. Machen, Esq.   mmachen@polsinelli.com
Linda S. Koffman, Esq.  lkoffman@ghplaw.com            Louis Puccini, Jr., Esq.  puccinilaw@puccinilaw.com
Mark J. Nora, Esq.         mnora@polsinelli.com

☐  Service information continued on attached page